## BAKER v. FRASER.

4-7856      193 S. W. 2d 131

Opinion delivered March 18, 1946.

*R. W. Tucker*, for appellant.

*Guy E. Williams*, Attorney General and *Oscar E. Ellis* and *J. F. Koone*, Assistant Attorneys General, for appellee.

Ed. F. McFaddin, Justice. Venue is the only issue in this appeal. Appellant filed action in the circuit court of Independence county against Bruce Fraser, Kelley Carnett, Homer Howell, and the Maryland Casualty Company. The complaint alleged that the plaintiff, Baker, was sheriff of Independence county for the years 1943-44-45; "that the defendants, Bruce Fraser, Kelley Carnett and Homer Howell, were duly appointed, qualified and acted during all the times hereinafter set out, as accountants with the State Auditorial Department or State Comptroller's office, of the State of Arkansas . . ."; "that as such accountants they made or purported to make an audit of the affairs and conditions of the Office of Sheriff of Independence county, Arkansas, for the years of 1943 and 1944, as made and provided by § 1723 of Pope's Digest of the Statutes of the State of Arkansas . . ."; that said audit was filed in Independence county as provided by law; "that in said audit or purported audit the defendants, Bruce Fraser, Kelley Carnett, and Homer Howell, knowingly, willfully, and falsely reported that the plaintiff owed the County General Fund of Independence county, Arkansas, the sum of $786.68, . . . owed the County Salary Fund of Independence county, Arkansas, the sum of $4,039.90 . . ."; and owed various other funds and accounts various amounts; "that the defendants, Bruce Fraser, Kelley Carnett, and Homer Howell, well knew, when they made, certified and published said audit, that it did not show the true conditions of the Office of Sheriff for the years of 1943 and 1944;

and that plaintiff verily believes that said report was made with malice and with intent to injure this plaintiff . . ."; that the report damaged plaintiff in the sum of $50,000, for which he prayed judgment.

The complaint as originally filed alleged that the Maryland Casualty Company "did furnish bonds to the defendants, Bruce Fraser, Kelley Carnett, and Homer Howell in the sum of $5,000 each, covering liabilities as made and provided by § 1723, Pope's Digest"; but the Circuit Court dismissed the Maryland Casualty Company from the action when a showing was made that such casualty company was never a surety on the bonds of any of the defendants. No objections were saved by the plaintiff to so much of the order as dismissed the Maryland Casualty Company from the action; and no claim is urged here in regard to the dismissal of the Maryland Casualty Company. So we treat the action as one against the three individual defendants, and refer to them as "the defendants."

Fraser and Howell were served with summons in Pulaski county. Carnett was served with summons in Washington county. The defendants appeared specially and moved to quash the service and dismiss the action, alleging: that no one of the three defendants resided or was served in Independence county, that Fraser and Howell resided in and were served in Pulaski county, that Carnett resided in and was served in Washington county; that "the official residence" of each of the three defendants was Pulaski county.

The Circuit Court sustained the motion, and rendered judgment, quashing the service and dismissing the cause. By this appeal, the plaintiff challenges not only the correctness of that judgment, but also the right and power of the Attorney General of Arkansas to appear for the defendants.

I. *This is a Personal Action.* When the Maryland Casualty Company was dismissed, the plaintiff's claim ceased to partake of the nature of an action on an official bond; and became a civil action for libel against the three named defendants.

II. *We Have No Statute that Localizes a Civil Action for Libel.* The absence of such a statute is significant. In the excellent volume published in 1934 by the late T. D. Crawford, and entitled "Civil Code of Arkansas," it is stated that our Civil Code of 1869 was patterned after the Kentucky Code of 1854. In the Kentucky Code there was a section (No. 74) concerning the venue in a civil action for libel. This section reads in part: ". . . every action for an injury to the character of the plaintiff, against a defendant residing in this State, must be brought in the county in which the defendant resides, or in which the injury is done." This section was construed by the Court of Appeals of Kentucky in the case of *Bright* v. *Hammond,* 105 Ky. 761, 49 S. W. 773; and the Kentucky court said: "It may be conceded that prior to the adoption of the Code the action would have had to have been prosecuted either in the county of the defendant's residence, or in some county in which he was served with process."

Our Code omits entirely the section quoted above from the Kentucky Code. Therefore, the inference is plain, that venue in civil actions for libel is governed by general principles rather than by statutory provisions specifically naming the venue for civil actions for libel. The omission in the copy of a provision found in the prototype necessarily raises the presumption that the omission was deliberate.

We turn, then, to the general rules. In 33 Am. Juris. 208, this statement appears: "Since actions for libel and slander are of a transitory nature, it is generally held, in the absence of any statutory provision to the contrary, that they may be brought in any jurisdiction or county in which the defendant is found." In 37 C. J. 19, the rule is stated: "Actions for defamation are generally considered as transitory, and may be brought in any jurisdiction or county in which the defendant may be found." We have held that actions for libel and slander must be brought in circuit court (*Axley* v. *Hammock,* 185 Ark. 939, 50 S. W. 2d 608; and *Southern Lumber Co.* v. *Axley,* 187 Ark. 292, 59 S. W. 2d 591) ; but the venue issue was not presented in

these cases. *McGill* v. *Miller*, 183 Ark. 585, 37 S. W. 2d 689 was a civil action for damages for libel. Miller sued McGill and the *Arkansas Gazette* in the circuit court of Lafayette county. The *Gazette* objected to venue, since it was domiciled in Pulaski county. McGill objected to venue on the claim that his "usual place of abode" was Pulaski county. This court sustained the venue contentions of the defendants, and dismissed the cause. While the reported case is not entirely in point, it nevertheless indicates rather clearly that a civil action for libel is transitory rather than local, and must be brought in the county where one of the defendants resides or is served.

Act 314 of 1939 refers only to venue in "actions for damages for personal injury or death by wrongful act," and therefore does not concern or localize actions for libel. Furthermore, since libel is not a localized action, Act 21 of 1941 does not apply. We conclude that we have no statute in Arkansas that localizes a civil action for libel, and venue should be determined by general principles.

III. *Venue.* Three statutes on venue are cited; and the question is which one applies to this case. The plaintiff claims that § 1387, Pope's Digest, governs. So far as is here concerned, that section says:

"Actions for the following causes must be brought in the county where the cause, or some part thereof, arose: . . .

"Second. An action against a public officer for an act done by him in virtue or under color of his office, . . ."

The appellant argues (1) that the defendants were accountants appointed by the State Comptroller to make county audits under the provisions of Act 41 of 1931 (§§ 1719-1729, Pope's Digest), and were therefore public officers; and (2) that the defendants filed the audit in Independence county (as required by § 1726, Pope's Digest), and therefore the cause of action arose in Independence county.

The appellees claim that, if they are in fact public officers, then they are certainly state officers, and that

in such event, venue is governed by § 1397, Pope's Digest, which, insofar as is here concerned, reads:

". . . and all actions against such . . . state officer, for or on account of any official act done or omitted to be done, shall be brought and prosecuted in the county where the defendant resides."

There is merit in the contention of the appellees. A review of the statutory provisions under which the defendants performed their duties is apropos: Section 1720, Pope's Digest, says that the State Comptroller shall be Director of County Audits, and shall prescribe the system of bookkeeping, etc., for all county offices; and "is authorized to employ . . . such other assistants as he deems necessary for the enforcement and administration of this Act." Section 1723 says that the Director shall make a complete audit of the books of all county officers annually, "and it shall be the duty of the Director to appoint one or more accountants for the making thereof. Such accountants shall be required to furnish bonds . . ." Section 1724 empowers the accountants to administer oaths, and says: "They shall also have the authority to examine or audit the accounts of any business concern . . . within . . . the State of Arkansas insofar as such accounts relate to the business transactions within the scope of their audit." Every provision of the statutes, involved in this suit concerning the power and duties of the accountants, shows that they operate over the entire state, going into whatsoever counties the State Director of Audits may send them. There is nothing in the law to indicate that the accountants have local districts or residences. The act prescribes their duties on a state-wide basis; they reside "officially" at the seat of State government. In short, if the accountants are "public officers" rather than only "public employees"—which question we do not decide—they are certainly "state" officers, rather than "local" officers.

In *Leonard* v. *Henry*, 187 Ark. 75, 58 S. W. 2d 430, an action was brought in Bradley county against Leonard, State Treasurer, and Lee, Sheriff of Bradley county,

charging they were joint tort feasors. Lee was served in Bradley county, and Leonard was served in Pulaski county. Leonard duly objected to the jurisdiction, and claimed that, as a state official, he could be sued only in Pulaski county, which was his residence. This court sustained Leonard's contention. We quoted in full § 1175, Crawford & Moses' Digest, which is now § 1397, Pope's Digest; and then said:

"The concluding phrase of this section, 'in the county where the defendant resides,' refers to the county of the officer's official residence, as the section relates to suits against an officer in his official capacity, and the county of his residence is therefore the place in which he performs the functions of his office. In the case of the State Treasurer, the county in which that officer resides is, of course, Pulaski county, for it is there that he maintains his office and keeps the records thereof.

"The reason for the statute is, no doubt, that the Legislature was unwilling to have the records of the officers and boards referred to in § 1175, carried out over the State and away from the place where they should be permanently kept. However, we are not required to determine the legislative purpose; it suffices to know the legislative fiat."

An earlier case, holding to the same effect, is *Reed v. Wilson*, 163 Ark. 520, 260 S. W. 438, wherein Wilson, as Commissioner of State Lands was sued in Conway county; and we there held that the State Land Commissioner could be sued only in the county in which he resided. These two cases are controlling. If the appellees were public officers—which we need not decide—then certainly they were state officers, and the venue in actions against them arising out of their official duties would be in Pulaski county under the authority of the two cases just cited.

If the appellees were not public officers, then the venue in this action against them would be governed by § 1398, Pope's Digest, which provides: "Every other action may be brought in any county in which the defend-

ant, or one of several defendants, resides, or is summoned." Since the appellees do not reside in, and were not served in, Independence county; and since we have no statute which localizes an action for libel, and since libel is a transitory action (as we have pointed out in II, *supra*): it is clear that § 1398 would be the applicable venue statute if the appellees are not public officers.

The result is, that the service was properly quashed, and the action dismissed on either theory, *i. e.,* public officers or private persons.

IV. *The Right and Power of the Attorney General.* Finally, the appellant challenges the right and power of the Attorney General to appear for the defendants. We are not cited to any statute or case that sustains the contention of the appellant; but, since it is so seriously argued, we think it appropriate to comment on the contention. At the outset, we pointed out that the Attorney General appeared only to make the plea of venue. If the defendants (appellees) were public officials, as appellant contends, then it might well be said that the attorney general was interested in seeing that public officials were sued in the proper venue. It is well to notice that in *Reed* v. *Wilson, supra,* the Attorney General appeared and made a plea of venue for Wilson, State Land Commissioner, when he was sued in Conway county; so, there is some precedent for the action of the Attorney General in the case at bar. Section 5599, Pope's Digest, says: "The Attorney General shall be the attorney for all State Officials, departments, institutions and agencies, and whenever any officer or department, institution or agency of the State needs the services of an attorney the matter shall be certified to the Attorney General for attention." This section does not make it the duty of the Attorney General to defend a private suit for a person who happens to be a State official; and there is nothing in the record before us even to indicate that such was the intention of the Attorney General. He appeared only to present the plea of venue; and there was no impropriety in his appearance under the facts in this case.

The judgment of the lower court is in all things affirmed.