The question posed by this appeal is: Did Act no. 314 of General Assembly of Arkansas, approved March 15, 1939 (fixing venue in actions for personal injury or death, in the county of plaintiff's residence or in the county where the injury occurred), repeal or amend 1387 of Pope's Digest (restricting venue, in certain actions against public officers, to the county in which the cause of action arose), so as to permit bringing in the county of plaintiff's residence a suit for damages against an officer for an assault, committed by him while making an arrest in another county? *Page 31 
Appellant, Claude F. Moncus, a minor, resident of Pike county, while at Amity, Clark county, was arrested by appellee, Douglas Raines, marshal of the town, and deputy sheriff of Clark county. While making the arrest appellee struck said appellant, as appellants averred, without cause; and to recover damages for the alleged wrongful assault appellants brought this suit in Pike county circuit court, appellee being served with Summons in Clark county. Motion to quash return on the summons, on the ground that the venue of the action was in Clark county, was filed by appellee. The lower court sustained the motion and dismissed the suit. This appeal followed.
Section 1387 of Pope's Digest is as follow's: ". . . Actions for the following causes must be brought in the county where the cause, or some part thereof arose: . . . Second. An action against a public officer for an act done by him in virtue or under color of his office, or for a neglect of official duty."
By 9799 of Pope's Digest it is provided that "the town marshal of incorporated towns shall be the principal ministerial officer of the corporation, and shall have the same power that sheriffs have by law, and his jurisdiction shall be coextensive with the county for offenses committed within the limits of the corporation." Appellee was therefore a "public officer" within the meaning of 1387 of Pope's Digest, quoted above.
We have held that misconduct by a peace officer of the kind complained of in the case at bar is embraced within the provisions of the quoted portion of 1387, supra, and that actions for damages therefor must be brought in the county where the cause of action or some part thereof arose. Edwards v. Jackson, 176 Ark. 107,2 S.W.2d 44.
The Supreme Court of Montana, construing a statute almost identical in language with our statute (1387, Pope's Digest) said in the case of State ex rel. Stephens v. District Court, 43 Mont. 571, 118 P. 268, 24 Ann. Cas. 1912C, 343: "It is contended that the tortious acts (alleged improper treatment of a prisoner by a warden) *Page 32 
complained of were not committed by the defendant `in virtue of his office'; but we think there is no force in the suggestion. It could only have been by reason of the fact that he was warden that opportunity was given to commit the alleged acts. If he could commit only legal acts `in virtue of his office,' plaintiff would have no cause of complaint. We think the Legislature intended that an action against a public officer for a tort alleged to have been committed by mill in the exercise of his authority as such officer should be tried in the county where the act was done."
Section 1 of Act 314, approved March 15, 1939, entitled "An Act to Fix the Venue of Actions for Personal Injury and Death," commonly called the "Venue Act," provides: "All actions for damages for personal injury or death by wrongful act shall be brought in the county where the accident occurred which caused the injury or death or in the county where the person injured or killed resided at the time of injury, and provided further that in all such actions service of summons may be had upon any party to such action, in addition to other methods now provided by law, by service of summons upon any agent who is a regular employee of such party, and on duty at the time of such service." And 2 of the same Act is as follows: "This act shall not repeal any provision for venue of actions except such as are inconsistent herewith and all laws and parts of laws in conflict herewith are repealed."
Appellants argue that this later Act repeals the above quoted sub-division of 1387 of Pope's Digest, which was a part of the Civil code adopted in 1868, in so far as the venue of actions such as the instant case is concerned, and that this suit, since it was for damages for personal injury, was properly brought in Pike county, the county of residence of the injured party.
The "Venue Act" did not expressly repeal the said sub-division of 1387 of Pope's Digest, and, if such a repeal was effected, it must have been done by implication. In fact, 2 of that Act provides that no existing *Page 33 
laws as to venue, unless inconsistent with the new Act, should be repealed.
Repeals by implication are not favored, and before a court may properly hold that a later Act repeals an earlier law it must appear that there is such a conflict between the two that both cannot stand, and, therefore, the later Act, being the last expression of legislative will, must prevail, or it must appear from the later Act that in enacting it the Legislature intended to take up and deal with all matters embraced in the purview of the prior Act.
In 50 Am.Jur., p. 542 et seq., the rule is thus stated: "Repeals by implication are not favored, and there are many instances in which particular statutes are held not to be repealed by implication. As a general rule, the legislature, when it intends to repeal a statute, may be expected to do so in express terms or by the use of words which are equivalent to an express repeal, and an intent to repeal by implication, to be effective, must appear clearly, manifestly, and with cogent force. The implication of a repeal, in order to be operative, must be necessary, or necessarily follow from the language used. . . . The courts will not hold to a repeal if they can find reasonable ground to hold the contrary. . . ."
On page 548 of the same volume (50 Am.Jur.) it is said: "The criterion by which to determine whether there is an implied repeal, is whether or not there is irreconcilable conflict between an earlier and a later statute. . . . Indeed, it must appear that a later act is contrary to, or inconsistent with, a former act in order to justify the conclusion that the first is repealed. Since laws are presumed to be passed with deliberation, and with full knowledge of existing ones on the same subject, it is but reasonable to conclude that the Legislature, in passing a statute, did not intend to interfere with or abrogate any former law relating to the same matter, unless the repugnancy between the two is irreconcilable. Except where an act covers the entire subject-matter of earlier legislation, is complete in itself, and is evidently intended to supersede the prior legislation on the *Page 34 
subject, a later act does not by implication repeal an earlier act unless there is such a clear, manifest, controlling, necessary, positive, unavoidable, and irreconcilable inconsistency and repugnancy, that the two acts cannot, by a fair and reasonable construction, be reconciled, made to stand together, and be given effect or enforced concurrently."
Mr. Endlich in his volume on Interpretation of Statutes, 113, said: "One of these presumptions is that the Legislature does not intend to make any alteration in the law beyond what it explicitly declares, either in express terms or by unmistakable implication; or, in other words, beyond the immediate scope and object of the statute. In all general matters beyond, the law remains undisturbed. It is in the last degree improbable that the Legislature would overthrow fundamental principles, infringe rights, or depart from the general system of law, without expressing its intention with irresistible clearness; and to give any such effect to general words, simply because, in their widest and perhaps natural sense, they have that meaning, would be to give them a meaning in which they were not really used."
In the case of Rightsell v. Carpenter, 188 Ark. 21,64 S.W.2d 101, we said: "Repeals by implication are not favored in the law. Houck v. State, 166 Ark. 613,267 S.W. 127; State v. White, 170 Ark. 880, 281 S.W. 678; Mays v. Phillips County, 168 Ark. 826, 272 S.W. 62. This court held in Babb v. El Dorado, 170 Ark. 10, 278 S.W. 649, that `the repeal of any law merely by implication is not favored and the repeal will not be allowed unless the implication is clear and irresistible.' Again, this court held in Gilliland Oil company v. State ex rel. Attorney General, 171 Ark. 415, 285 S.W. 16, that `the presumption is against repeal of statutes by implication'."
"A law passed on one subject does not by implication suspend the operation of a law on a different subject, without mentioning the latter law." (Headnote 4), McDonald v. Wasson, 188 Ark. 782, 67 S.W.2d 722.
There is no necessary or irreconcilable conflict between the two laws here involved. *Page 35 
In the first the Legislature was dealing with the venue of suits to enforce liability for official misconduct of officers. Such misconduct may consist of many things, such as (in case of peace officers) failure properly to serve legal writs, false imprisonment, and, as in the case at bar, the wrongful or excessive use of force in making an arrest. The Legislature determined that such actions against officers, for obvious reasons of public policy, ought to be brought in the county where the cause of action originated. There is no invincible repugnancy between the two laws. Both may stand and be permitted to operate within their respective orbits, as prescribed by the Legislature.
Nor can it be said that the later act showed intention by the legislature to take up and deal with the entire subject-matter of the prior statute. The former statute dealt with the venue of suits against public officers for all kinds of official misconduct, whereas the later act fixed venue in only one kind of action, that for personal injury and death. In a discussion of the question of repeal of a prior statute by a later act indicating legislative intent to deal with the entire subject-matter, it is said in Corpus Juris, vol. 59, p. 920: "In order to effect a repeal by implication on this ground it must appear that the subsequent statute covered the whole subject-matter of the former one, and was intended as a substitute for it."
We conclude that the lower court correctly construed the law. Its judgment is, therefore, affirmed.
SMITH J., concurring. The opinion in the instant case is perfectly sound, but it is in irreconcilable conflict with, the opinion in the case of Chicago, R. I. Pac. Ry. Co. v. Bone, 203 Ark. 1067, 160 S.W.2d 51, to which no reference is made. Convinced as I am, that the opinion in the instant case is correct, although in conflict with the opinion in the railroad case, supra, I concur in the opinion which correctly states the law.
When Act 314 of 1939 was passed, 1387, Pope's Digest, was in effect, just as 1394, Pope's Digest, was in effect. Section 1387 is the section which, as the *Page 36 
majority say, localizes actions against a public officer for acts done in virtue of, or under the color of his office, and the majority say it was not repealed by Act 314. The argument leading to that conclusion is sound and decisive, but it cannot be reconciled with the railroad case, supra, which held that 1394, Pope's Digest, localizing actions against railroads had been repealed, as being in conflict with Act 314.
In the dissenting opinion in the railroad case, supra, the question was asked, "Has this section, 1165, C. M. Digest, now appearing as 1387, Pope's Digest, been repealed by Act 314; and, if so, where are we in the matter of jurisdiction as to venue of personal injury accidents?" A distinction has been made between the railroad case and the instant case, where no difference between the two cases exists. The railroad case, like this case, was a suit for a personal injury. Certainly assaulting and beating another is a personal injury. Section 3, Ch. Torts, 52 Am.Jur. 362.
In the majority opinion in the railroad case, it is said that: "It appears to us that this language (of Act 314) is all inclusive. `All actions for damages for personal injury or death by wrongful act' means just what it says, and that is that all personal injury actions shall be brought in one of the two counties named. (That is, in the county where the plaintiff resides, or where the injury occurred.) It does not say `all actions, except as against railroad companies,' but `all actions,' and we have several times so held." Neither does Act 314 say "all actions except actions against public officers."
It appears obvious to me that both 1387, Pope's Digest, and 1394, of that digest were repealed by Act 314, or neither was repealed by that act. The opinion in the instant case is conclusive that 1387 was not repealed, and is equally conclusive that 1394 was not repealed. It is certain that neither section was expressly repealed, and if either was repealed at all it was by implication, and the opinion in the instant case shows that this was not done. *Page 37 
It is inconsistent to hold that 1394 was repealed but that 1387 was not. Being of the opinion that neither section was repealed, I must, of course, concur in the holding that 1387 was not repealed. The opinion in the railroad case is unsound and must sooner or later be overruled, if we adhere to the opinion in the instant case.