DOWNEY v. TOLER, JUDGE.

4-8811                                       216 S. W. 2d 60

Opinion delivered December 20, 1948.

Rehearing denied January 17, 1949.

*Guy E. Williams,* Attorney General, and *Arnold Adams* and *Jeff Duty,* Assistant Attorneys General, for petitioner.

*Kenneth C. Coffelt,* for respondent.

ED. F. McFADDIN, Justice. In this proceeding for a writ of prohibition two questions are necessarily to be answered:

(1) Are members of the Arkansas State Police to be considered as "State officers" within the purview of § 1397, Pope's Digest; and

(2) Does the so-called Venue Act (No. 314 of 1939) amend or repeal § 1397, Pope's Digest?

A complaint was filed in the Grant Circuit Court by five plaintiffs against "Calvin J. Downey, State Police Officer, and Melvin R. Sanders, State Police Officer, and Gus Adams, city marshal of Sheridan, Arkansas." The

complaint alleged that each of the plaintiffs had been assaulted and subjected to personal injuries in Grant county, Arkansas, at the hands of the "above-named defendant officers," and at a time "while officers Downey and Sanders were wearing the uniform of State policemen and acting as State policemen." Each plaintiff sought both actual and punitive damages. In the amendment to the complaint this was the prayer: "Wherefore, the plaintiffs, and each of them, prays that they have judgments in the amounts set forth in their original complaint against the defendants, Calvin J. Downey, State Police Officer, Melvin R. Sanders, State Police Officer, and Gus Adams, City Marshal of Sheridan, Arkansas; for their costs, and for all proper relief."

Downey was served with summons in Pulaski county, and Sanders was served with summons in Clay county. They specially appeared and demurred to the jurisdiction of the Grant Circuit Court, saying: "Defendants state that any action against said defendants on account of an official act done must be brought and prosecuted in the 'official residence' county of the defendants; that this court has no jurisdiction over said cause of action; that the venue of said action is Pulaski county; and that this action cannot be had and maintained in Grant county." The trial court denied the foregoing contention of the defendants, and was about to proceed to trial. Thereupon, the two State Policemen filed in this court the present petition for a writ of prohibition against Hon. Thomas E. Toler, as judge of the Grant Circuit Court.

We have a number of cases dealing with the question of venue in actions against persons having official status. Some of these cases are: *Leonard v. Henry,* 185 Ark. 75, 58 S. W. 2d 430; *Williams v. Priddy,* 188 Ark. 137, 64 S. W. 2d 553; *Edwards v. Jackson,* 176 Ark. 107, 2 S. W. 2d 44; *Bledsoe v. Pierce-Williams Co.,* 147 Ark. 51, 226 S. W. 532; *Reed v. Wilson,* 163 Ark. 520, 260 S. W. 438; and *Baker v. Fraser,* 209 Ark. 932, 193 S. W. 2d 131. These and other cases afford background approach to the questions first listed, which we now consider.

I. *Are Members of the Arkansas State Police to Be Considered as "State Officers" Within the Purview of Section 1397, Pope's Digest?* [1] Insofar as is here concerned, this statute says: " . . . all actions against such . . . state officer, for or on account of any official act done or omitted to be done, shall be brought and prosecuted in the county where the defendant resides."

In *Baker* v. *Fraser, supra,* we quoted from *Leonard* v. *Henry*: "The concluding phrase of this section, 'in the county where the defendant resides,' refers to the county of the officer's official residence, as the section relates to suits against an officer in his official capacity. . . . "

The word "officer" has a variety of meanings. In military parlance an "officer" is distinct from an enlisted person. In law enforcement matters any policeman or sheriff is referred to as an "officer." In constitutional matters certain designated officials are called officers, while others are called employees. Term, tenure, oath and various other tests have been employed to determine the distinction between an officer and an employee. See 46 C. J. 921-932, inclusive. But in said § 1397, here under consideration, we think the word "officer" was used as in the definition shown in Webster's Dictionary, *i. e.*: "one who holds an office; specif.: a person lawfully invested with an office, whether civil, military, or ecclesiastical, and whether under the state or a private corporation or the like; as, a church officer, a police officer; . . . "

With the foregoing in mind, we examine the Act creating the present Department of Arkansas State Police, which is Act 231 of 1945. Section 1 says: "For the purpose of enforcing the motor vehicle laws, traffic laws and other state laws relating to protecting and properly maintaining the State Highway System of the State of Arkansas and to render more effective the apprehension of criminals and the enforcement of criminal law, there is hereby created the Department of Arkansas State Police. The police officers hereinafter provided for shall

[1] This section 1397 of Pope's Digest was originally section 484 of the Civil Code of 1869. It was amended by Act 48 of 1871 to read as at present. It is now § 34-201 of Ark. Stats., (1947).

be known as 'Arkansas State Police.' " Sections 2 and 3 provide for the Arkansas Police Commissioners. Section 4 provides for the Director of the Department of Arkansas State Police. Section 5 empowers the Director, by and with the approval of the Commission, to select the members of the police force. Section 6 says: " . . . The members of the Arkansas State Police shall hold their offices until and unless removed for cause." Section 7 says: "It shall be the duty of the. Arkansas State Police to patrol the public highways, to make arrests and to enforce the laws of this State relating to motor vehicles and the use of the State highways; to assist in the collection of delinquent motor vehicle license and the collection of gasoline and other taxes that are now or may hereafter be required by law. . . .

"The Arkansas State Police shall be conservators of the peace and as such shall have the powers possessed by policemen in cities and sheriffs in counties, except that the Arkansas State Police may exercise such powers anywhere in this State. Said policemen shall have all the power and authority of the State Fire Marshal and shall assist in making investigations of arson and such other offenses as the Director may direct and shall be subject to the call of the Circuit Courts of the State and the Governor. . . .

"It shall be the duty of the Arkansas State Police immediately upon the arrest of any person charged with committing a felony, to place him in a county jail and it shall be the duty of said jailer to receive such prisoner. . . . "

Section 9 requires the wearing of a uniform and a badge by every Arkansas State policeman. Section 13 says: "Any Arkansas State Policeman shall have the authority in case of emergency to call upon any reputable citizen of the State for assistance and to deputize same whenever it is deemed necessary for the proper enforcement of the law. . . . " Section 14 says: " . . . All members and officers of the Arkansas State Police shall before entering upon their duties, take the oath now provided by law for public officials. . . . "

In short, Arkansas State Police are under the control of the State; they represent the State government, and —within the limits of the said Act—they are State-wide law enforcement officials. From a study of the said Act 231 of 1945 we conclude that, for purposes of determining venue in actions against them, for acts done in their official capacity (as alleged in this case by the plaintiffs in the circuit court), the members of the Arkansas State Police are State officers within the purview of § 1397, Pope's Digest, and can be sued for official acts only in the county of the official residence of the Arkansas State Police, which is Pulaski county.

It is insisted that the venue in this action against the State Police is fixed by § 1387, Pope's Digest,[2] which says: ''Actions for the following causes must be brought in the county where the cause, or some part thereof, arose: . . . Second. An action against a public officer for an act done by him in virtue or under color of his office, : . . '' In support of the applicability of said § 1387, citation has been made to the case of *Moncus* v. *Raines,* 210 Ark. 30, 194 S. W. 2d 1.

This said § 1387 was § 85 of the Civil Code of 1869; and the same Code—in § 484—provided for venue in actions against *State officers.* So the conclusion is inescapable that § 484 of the Code (now § 1397 Pope's Digest) fixed the venue in actions against *State* officers, and that § 85 of the Code (now § 1387, Pope's Digest) fixed the venue in actions against other *public* officers except *State* officers. This conclusion results from the application of the rule, *expressio unius est exclusio alterius* (the expression of the one is the exclusion of the other), which is a recognized canon of construction. *Cook* v. *Ark.-Mo. Power Corp.,* 209 Ark. 750, 192 S. W. 2d 210; *Hackney* v. *Southwest Hotels,* 210 Ark. 234, 195 S. W. 2d 55. Such conclusion also gives full force to both sections, and prevents an otherwise irreconciliable conflict. *Moncus* v. *Raines, supra,* held that a town marshal was a ''public officer'' within the purview of § 1387, Pope's Digest, which holding is in harmony with our present holding that the Arkansas State Police, in the

---

[2] This is now § 27-602 of Ark. Stats., (1947).

case at bar, are "State officers" within the purview of § 1397, Pope's Digest.

II. *Does the So-called Venue Act (No. 314 of 1939) Amend or Repeal § 1397, Pope's Digest?* In the briefs for the respondent it is insisted that the action filed by the plaintiffs in the Grant Circuit Court was localized by the so-called venue act, which is No. 314 of 1939,[3] and which reads in part: "All actions for damages for personal injury . . . shall be brought in the county where the accident occurred which caused the injury . . . . or in the county where the person injured . . . resided at the time of the injury, . . . " But § 2 of the said act reads: "This act shall not repeal any provision for venue of actions except such as are inconsistent herewith . . . "

We hold that § 2 shows that it was not the legislative intent for § 1397, Pope's Digest, to be amended or repealed by the said Act 314. Furthermore, in *Moncus* v. *Raines,* 210 Ark. 30, 194 S. W. 2d 1, we held that said Act 314 did not amend or repeal § 1387, Pope's Digest; and the reasoning in that opinion, as to § 1387, Pope's Digest, applies with equal force and effect to § 1397, Pope's Digest, which is the section here under consideration. In short, the venue in actions or suits against State officers for official acts is fixed by § 1397, Pope's Digest, to be the county of official residence, which in the case at bar is Pulaski county. In this connection, in regard to suits against joint tort-feasors, we quote from our opinion in *Leonard* v. *Henry,* 187 Ark. 75, 58 S. W. 2d 430: "If it be objected that our holding makes it necessary to sue the collector and his sureties in Bradley county, and the treasurer and his surety in Pulaski county, although it is alleged that they are joint tort-feasors, it may be answered that the statute so requires, and we have held that 'it was within the competency of the Legislature to enact it.' "

It follows that the Grant Circuit Court is without jurisdiction to proceed in the action pending in that court

---

[3] This Act has many times been before this court. Section 1 of the Act may now be found in Ark. Stats. (1947), § 27-610.

against State Police Officers Calvin J. Downey and Melvin R. Sanders; and the writ of prohibition is ordered to be issued.

MILLWEE, J. (dissenting). I agree with the majority's conclusion that Act 314 of 1939 did not repeal either the second subdivision of Ark. Stats., § 27-602 or Ark. Stats., § 34-201. Nor did it repeal the third subdivision of Ark. Stats. § 27-603. The first statute fixes the venue of "an action against a public officer for an act done by him in virtue or under color of his office, or for a neglect of official duty" in the county where the cause of action, or some part thereof, arose. The last mentioned statute provides that "all actions against the State, and all actions against State boards, State commissioners or State officers on account of their official acts" must be brought in Pulaski county. All three statutes were adopted by the Legislature of 1868 as a part of the Civil Code.

I cannot agree that it was the intention of the lawmakers to place members and employees of the State Police Department in the same category with such state officials and departmental chiefs as the Governor, State Treasurer, State Revenue Commissioner or members of the State Police Commission, as the majority now holds. The effect of our decision in *Moncus* v. *Raines*, 210 Ark. 30, 194 S. W. 2d 1, was to modify, if not overrule, the case of *Chicago, R. I. & Pac. Ry. Co.* v. *Bone*, 203 Ark. 1067, 160 S. W. 2d 51, where a majority held that § 1 of Act 314, *supra*, was all inclusive in its terms and applied to all actions for personal injury or death. In *Moncus* v. *Raines, supra*, we held that an action for personal injuries against a city marshall must be brought under § 27-602, *supra*. So the action here against the city marshal of Sheridan is localized in Grant county where the cause of action arose. The result of the majority holding is that plaintiffs must split their cause of action and pursue their remedy against the city marshal in Grant county and maintain a separate suit against the state police defendants in Pulaski county. The majority attempts to justify this strained construction of these venue statutes on the authority of *Leonard*

v. *Henry,* 187 Ark. 75, 58 S. W. 2d 430. However, it was clearly pointed out in that case that the Legislature intended to confine suits against the State Treasurer to Pulaski county because he maintained his office and official residence in that county and the lawmakers were unwilling to have the records of the officers and boards mentioned in § 34-201 carried out over the state and away from the place where they should be permanently kept. The same reasoning does not apply to a member of the state police force.

Under § 11 of Act 231 of 1945 and the earlier Act 166 of 1937, the state police department is authorized to establish district headquarters in parts of the state other than the city of Little Rock. It is a matter of common knowledge that such headquarters have been established and that state policemen reside and perform their duties in various counties over the state. They maintain neither their actual nor their official residence in Pulaski county and should be amenable to the same venue law as other public officers with whom they live and serve under § 27-602, *supra.*

Certainly the Legislature of 1868 did not have in mind state policemen when it enacted either § 27-603 or § 34-201, *supra.* These statutes are clearly designed to apply to state officers who head the various departments, boards and commissions of the state government located in Pulaski county.

Under the majority's interpretation of the statutes in question, a member of the state police force may hereafter commit a brutal, unwarranted and malicious assault and injury upon a citizen of Washington county in that county and the latter will be forced to come to Pulaski county to pursue his remedy against the offending officer. And this will be true even though the officer is also a citizen and resident of the county where the cause of action arose and may also prefer that it be tried there. Both parties will be subjected to the inconvenience and expense of bringing witnesses from the county where the cause of action occurred, and could be more fairly tried, to a distant county. If it is the thinking of the majority that members of the state police force

should be immune from responsibility for tortious acts committed by them under color of their office, the result desired has been substantially accomplished by the interpretation given the statutes.

Since it is my conviction that § 27-602, *supra,* is the governing statute, I respectfully dissent from the opinion of the majority. I am authorized to say that Justices FRANK G. SMITH and R. W. ROBINS join in this dissent.