SCHIRMER *v.* COCKRILL, JUDGE.

5-490                                    269 S. W. 2d 300

Opinion delivered June 14, 1954.

[Rehearing denied July 7, 1954.]

ECLECTIC STATE MEDICAL BOARD *v.* HUGHES.

5-480

Opinion delivered June 14, 1954.

*Q. Byrum Hurst,* for petitioner.

*Tom Gentry,* Attorney General, for respondent.

*C. A. Stanfield,* for petitioner.

*Joseph C. Kemp,* for respondent.

Ed. F. McFaddin, Justice. These two cases stem from the efforts of the Attorney General to have a hearing by the Eclectic State Medical Board (hereinafter called "Board") regarding the validity of the license of Dr. J. S. Schirmer.

On September 14, 1953, the Attorney General of Arkansas filed suit in the Circuit Court of Clay County, Arkansas, against Dr. J. S. Schirmer, seeking a hearing for the purpose of cancelling the license of Dr. Schirmer to practice medicine in this State. That matter reached this Court in the case of *Schirmer* v. *Light,* which was a prohibition proceeding, and in which an opinion was delivered by us on November 23, 1953. See *Schirmer* v. *Light,* 222 Ark. 693, 262 S. W. 2d 143.

In keeping with the views expressed in the foregoing opinion, the Attorney General, on December 8, 1953, filed a petition with the said Board, seeking a hearing on the validity and legality of the license which Dr. Schirmer claimed to have been issued by the said Board. The hearing was sought under the provisions of § 72-611, *et seq.,* Ark. Stats. On December 15, 1953, the Board decided that May 11, 1954, was the earliest date on which the Board would hold a meeting. The Attorney General felt that the Board was unduly delaying the hearing, and filed suit against the Board in the Pulaski Circuit Court, seeking a writ of mandamus to compel the Board to meet at an earlier date. The Pulaski Circuit Court, Third Division (J. Mitchell Cockrill, Judge), thereupon issued its order, directing the said Board to meet and have its hearing on April 12, 1954.

The Board did meet on April 12, 1954, and decided that its hearing should be secret, and not open to the public. Thereupon, certain newspaper, radio, and television representatives obtained an order from the Pulaski *Chancery* Court, requiring the Board to have open hearings. The Chancery Court in issuing this order was

apparently relying on Act 343 of the Acts of Arkansas of 1953. When the Chancery Court order was served on the Board, it immediately suspended the hearing in the Schirmer matter, and filed Case No. 480 in this Court,[1] in which the Board sought a writ of certiorari to bring up to this Court and quash the order of the Pulaski Chancery Court which required the Board to have public hearings.

After the said Board suspended its hearings on April 12, 1954 (which hearings were being held in accordance with the mandamus order of the Pulaski Circuit Court), the Attorney General of Arkansas then filed in the Pulaski Circuit Court, Third Division, Case No. 40487 against the said Board and Dr. Schirmer, praying for certiorari against the said Board, alleging that the Attorney General had appeared before the Board at the hearing on April 12th and had sought to introduce his evidence and present his case, regardless of whether the sessions were open or closed, and that the Board had indefinitely adjourned its meeting of April 12th, without giving the Attorney General any opportunity to present his case, and that such indefinite adjournment on April 12th was in violation of the mandamus order of the Pulaski Circuit Court, Third Division, directing the Board to proceed on that date to a hearing.

The Attorney General also alleged that the conduct of the Board had been such as to clearly demonstrate that it would be futile and useless for the Attorney General to present his case to the Board, and that the Board had clearly demonstrated that it was not going to proceed with the hearings as directed by the Pulaski Circuit Court. The Attorney General prayed (1) that the Pulaski Circuit Court should issue a writ of certiorari directing a copy of all the proceedings and records of the respondent, Eclectic State Medical Board, to be brought before it for review; and (2) "that this Court enter an order setting down for full and complete hearing, and its subse-

---

[1] That case is styled: *Eclectic State Medical Board* v. *William W. Hughes, Bobbie Forster, Wm. H. Hadley, Jr., Dick Evans, Bill Neel, Bud Lemke, Sam G. Harris, and Dean Duncan.*

quent determination thereof, the charges filed before the respondent Board herein, which said respondent has failed and refused to hear." This was case No. 40487 in the Pulaski Circuit Court, in which the said Board and Dr. Schirmer were respondents. Dr. Schirmer filed a response in the Pulaski Circuit Court, denying all material allegations of the petition for certiorari, and praying that it be dismissed.

The Circuit Court issued its order granting the first prayer of the Attorney General's complaint (*i.e.,* that the Board bring to the Circuit Court all copies of proceedings and records in connection with the Schirmer matter). Thereupon, Dr. Schirmer, without waiting for further Circuit Court action, filed Case No. 490 in this Court, seeking to prohibit the Pulaski Circuit Court (Third Division, J. Mitchell Cockrill, Judge) from any further proceedings in Case No. 40487 therein pending. Dr. Schirmer claimed that the said Circuit Court was entirely without jurisdiction, and that the Eclectic State Medical Board had exclusive jurisdiction.

Thus Cases No. 490 and 480 in this Court are intertwined and grow out of the efforts of the Attorney General to have a hearing regarding the validity of the license of Dr. J. S. Schirmer.

## Case No. 490

This is Dr. Schirmer's petition seeking a writ of prohibition against the Circuit Court; and the petition of Dr. Schirmer is denied. The rule is well established that prohibition does not issue if the court (in this instance the Pulaski Circuit Court) has jurisdiction; and clearly such Court does have jurisdiction. If the Court should wrongfully act within its jurisdiction, then the remedy is by appeal. If it acts in circumstances where there is no jurisdiction or proceeds beyond its jurisdiction, a void order may be quashed by certiorari. But prohibition cannot be used as a substitute for appeal or certiorari. *Keenan* v. *Strait,* 221 Ark. 83, 252 S. W. 2d 76; *Harris* v. *Marlin,* 220 Ark. 621, 249 S. W. 2d 3, and *Gordon* v. *Smith,* 196 Ark. 926, 120 S. W. 2d 325.

The legal residence of the Eclectic State Medical Board is Pulaski County, Arkansas. *Baker* v. *Fraser,* 209 Ark. 932, 193 S. W. 2d 131; *Leonard* v. *Henry,* 187 Ark. 75, 58 S. W. 2d 430; *Downey* v. *Toler, Judge,* 214 Ark. 334, 216 S. W. 2d 60. The said Board had power and authority to conduct a hearing at Little Rock in reference to the revocation of Dr. Schirmer's purported license. See § 72-611, Ark. Stats., and the case of *Schirmer* v. *Light,* 222 Ark. 693, 262 S. W. 2d 143. The Pulaski Circuit Court has supervisory jurisdiction over the said Eclectic State Medical Board. Section 22-302, Ark. Stats., provides:

"Said Circuit Courts shall have power to issue writs of certiorari to any officer or board of officers, city or town council, or any inferior tribunal of their respective counties, to correct any erroneous or void proceeding or ordinance, and to hear and determine the same; . . ."

Thus the Pulaski Circuit Court could legally issue a writ of certiorari to the Board; and if the Circuit Court found that the Board was failing and refusing to act in accordance with the order of the Pulaski Circuit Court directing the hearing for April 12, 1954, then the Pulaski Circuit Court could act in lieu of the Board.[2] Some of the cases involving the authority of the Circuit Court over Boards are *Hall* v. *Bledsoe,* 126 Ark. 125, 189 S. W. 1041; *Green* v. *Blanchard,* 138 Ark. 137, 211 S. W. 375, 5 A. L. R. 84; *Eclectic State Board* v. *Beatty,* 203 Ark. 294, 156 S. W. 2d 246.

Therefore the issue now before the Pulaski Circuit Court is to decide whether the said Board has been so

[2] In *Smith* v. *Ill. Bell Tele. Co.,* 270 U. S. 587, 70 L. ed. 747, 46 S. Ct. 408, it was shown that the Telephone Company had filed an application with the State Commerce Commission of Illinois for a schedule of rates; and that the Commission had allowed the petition to remain dormant for a period of two years. In holding that the Courts could act when the administrative agency had failed, the U. S. Supreme Court said: "For this apparent neglect on the part of the commission, no reason or excuse has been given; and it is just to say that, without explanation, its conduct evinces an entire lack of that acute appreciation of justice which should characterize a tribunal . . ." Thus, the U. S. Supreme Court held that an unreasonable delay by a Board gave the courts just power to act. On the general subject of the exhaustion of administrative remedies, see 73 C. J. S. 351 et seq.

dilatory and slothful in the matter of the Attorney General's efforts to have a hearing against Dr. Schirmer as to justify the Circuit Court in lifting—because of such extraordinary circumstances—the entire proceeding against Dr. Schirmer to the Circuit Court for trial and determination. If the Circuit Court should so find (a matter within its sound discretion), then the Circuit Court will proceed to a hearing on the Attorney General's case against Dr. Schirmer, and at the conclusion of that hearing, a final judgment may be entered by the Circuit Court, from which there may be a review, as in any other final judgment.

If the Circuit Court should decide that the Board should be allowed to continue to hear the Attorney General's case against Dr. Schirmer under strict orders of the Circuit Court that prevent any delay in hearing and decision, then such conclusion is for the Circuit Court.

At all events, we deny Dr. Schirmer's petition for prohibition in Case No. 490.

## Case No. 480

In this case the Board is seeking to quash the order of the Pulaski Chancery Court, which directed the Board to have public hearings. Because of what we have said in Case No. 490, it is obvious that the Pulaski Circuit Court had undertaken to exercise jurisdiction, and was exercising jurisdiction in directing that the Board meet and conduct its hearing on April 12, 1954.

It is clear that there must be no conflict of jurisdiction between the circuit courts and the chancery courts; and the Circuit Court had jurisdiction to order the Board to meet and conduct its hearing, and such meeting was being held in accordance with the order of the Circuit Court. Under these peculiar facts, it is obvious that the Chancery Court should have remitted Hughes, *et al.*, to the Circuit Court for such relief as they desired, because the Circuit Court had already taken jurisdiction. In instances in which law and equity courts have concurrent jurisdiction, then when one court as-

sumes jurisdiction, the other court must not thereafter attempt to act in the same matter. *Ford* v. *Judsonia Merc. Co.,* 52 Ark. 426, 12 S. W. 876, 6 L. R. A. 714; *McCracken* v. *McBee,* 96 Ark. 251, 131 S. W. 450; *Home Fire Ins. Co.* v. *Benton,* 106 Ark. 552, 153 S. W. 830, and *Shields* v. *Shields,* 183 Ark. 44, 34 S. W. 2d 1068.

We therefore hold that in Case No. 480, the newspaper, radio, and television representatives should have gone into the *Circuit Court,* which had already undertaken to exercise jurisdiction; and this makes it unnecessary for us to decide anything about the meaning of Act 343 of 1953. It is only fair to say that nothing in the record shows that the Board ever advised the Pulaski Chancery Court that the Pulaski Circuit Court had taken jurisdiction, but rather it used the Chancery order as an excuse to indefinitely adjourn the hearings. Therefore, in quashing the order of the Pulaski Chancery Court, we do so at the expense of the Board, which did not raise the proper question in the Court below. Our holdings in each case herein are effective immediately so that the Pulaski Circuit Court may proceed without awaiting any time for rehearing.

Justice WARD dissents in Case No. 490.

The Chief Justice and Justice WARD dissent in Case No. 480.

PAUL WARD, J., (dissenting). My reasons for disagreement with the majority in both of the above cases are set out below.

Case No. 480. The majority opinion quashes the order of the Chancellor which required the Eclectic State Medical Board to hold open meetings. The reason given by the majority for its conclusion is that the Chancellor had no jurisdiction to issue said order. The reason why the Chancellor had no jurisdiction, says the majority, is because, at the time the order was issued, the Circuit Court of Pulaski County had already taken jurisdiction of the case.

In my opinion the conclusion of the majority is erroneous because:

(a) The question of lack of jurisdiction by the Chancellor was not raised by either party either in the pleadings or the arguments. The court should, it seems to me, confine its decisions to the issues raised by the parties unless grave questions of justice dictate otherwise. No such questions appear here. It is recognized that this court can and should raise the question of jurisdiction whether it is pleaded or not, but, as is pointed out presently, the majority can not justify its opinion on this basis.

(b) Where does the majority get its information that the Circuit Court had jurisdiction of the Schirmer hearing on April 12th when the Chancellor issued his order? It must have gotten this information from hearsay, the newspapers, or some other litigation, none of which sources are approved if my understanding of law is correct. There is not one word or sentence in the entire record on file in this case which says or remotely suggests that the Circuit Court of Pulaski County had acquired jurisdiction on April 12, 1954 when the Chancellor's order was issued.

Aside from the above I agree with the dissenting opinion in this case written by the Chief Justice.

Case No. 490. The majority opinion holds that the Circuit Court, by virtue of its two orders issued herein on April 24, 1954, did not take jurisdiction to try all the issues in the Schirmer case. Its conclusion was that the Circuit Court have another hearing to determine whether (a) it will try the case or (b) send the matter back to the Eclectic State Medical Board for trial. Under the situation thus created by the majority opinion I can see but one result when the matter is presented to the Circuit Court, and that will be to send the matter back to the Board for trial. The reason I say this is: The only thing, so far as the record shows, that stopped the Board from proceeding with the hearing on April 12th was the order issued by the Chancellor, and now, the majority says, the order of

the Chancellor was illegally issued. Thus, I envision another round of delays and appeals to this court.

In my opinion, based on the record in this case, the Circuit Court took complete jurisdiction, by virtue of the two orders issued by it on April 24th, to try this cause, and this court should now order the Circuit Court to proceed with the trial and make a complete disposition of the cause. My reasons are set out below.

(a) On April 15, 1954, after the Board had refused to proceed with the hearing on the 12th of April, the Attorney General filed in the Circuit Court a Petition For Certiorari alleging, among other things, that; he had "vainly and futilely attempted to present evidence" before the Board; "it was obvious that said respondent Board had no intention of conducting a hearing on said charges," and; "it is impossible for the petitioner to obtain a hearing before the respondent Board." Petitioner's prayer was: (1) That copies of the proceedings and records of the Board be brought up for review: (2) That the Circuit Court "set down for full and complete hearing and its subsequent determination thereupon the charges filed" before the Board; (3) That the Circuit Court revoke and cancel the purported license of Schirmer, and; (4) That the Circuit Court enjoin Schirmer from practicing medicine in the State of Arkansas.

To the above petition Schirmer filed a Response in which he denied all the allegations made by the petitioner, and he also alleged that he was entitled to a closed-session hearing before the Board.

On the above state of the pleadings a hearing was had before the Circuit Court on April 24, 1954. The court, after stating it was "well and sufficiently advised," found "that said petition for Writ of Certiorari should be granted," and gave the Board 10 days in which to file "a full and complete transcript of the record of the entire proceedings."

(b) If the above does not make it sufficiently clear that the Crcuit Court took complete jurisdiction of the

case, then all doubt was removed when the Circuit Court issued its next order on the same day. This order reads as follows:

"The defendant, Jacob Sass Schirmer, is ordered to appear in the court room of the Pulaski Circuit Court, Third Division, on April 30th, 1954, at 1:30 P. M., for the purpose of answering questions propounded to him in accordance with the provisions of Act 335 of the Acts of 1953."

A casual reading of Act 335 of 1953 reveals the fact that the Circuit Court had no authority to issue this order unless it was taking jurisdiction to try the case. Respect for the trial judge's familiarity with the law compels the conclusion that he intended to and did take complete jurisdiction to try the case against Schirmer.

---

GRIFFIN SMITH, Chief Justice, dissenting. At a time when circuit court had merely ordered the Eclectic Board to conduct a hearing, but had not attempted to control its discretion, the Board concluded that Act 343 of 1953 vested it with power to determine whether the investigation it had hesitated to undertake was affected by a requirement that its meetings be open to the public. The applicable part of Act 343 is copied in the margin.[1]

Effect of the court's holding is that Judge Cockrill had not assumed jurisdiction to the extent of lifting proceedings from the Board's control. At least this had not been done when, on April 12th, the Chancellor's mandatory order was issued. Ten days later circuit court directed that Dr. Schirmer submit to depositions, but it is stated that the order was predicated on Act 335 of 1953—

---

[1] "The meetings of all Boards and Commissions of this State, and of the political subdivisions thereof, including cities, counties, towns, and meetings of city councils, and the meetings of all departments and agencies of the state, or its political subdivisions and of each and all meetings of the board of directors of local school districts shall be open to the public, except in those instances when such boards and commissions meet to consider privileged matters, communications, and information concerning individuals, [and] . . . it shall be unlawful for said board to take any official action on any non-privileged matter [except publicly]."

discovery. The statute applies to circuit, chancery, and probate courts.

It will therefore be seen that when Judge Williams directed that the proceedings be public circuit court had merely ordered the board to hold hearings; but when Hughes and those associated with him procured the order against closed-door sessions, the board promptly adjourned.

Unless this court's majority is willing to say that circuit court had assumed jurisdiction for the purpose of hearing the evidence relating to Schirmer—a course that could be taken only upon a finding that the board was not functioning—the conclusion is inescapable that there could have been no jurisdictional conflict April 12th. The board was acting as a statutory agency; it had met for the ostensible purpose of investigating charges against Schirmer; circuit court had not undertaken to direct the manner of operation, and as far as circuit court was concerned the board was as least theoretically making an independent investigation, procedurally and otherwise.

But the board concluded that it was considering "privileged matters, communications, and information concerning individuals," hence under its construction of the law Act 343 permitted complete secrecy in respect of all persons other than the principal and his attorneys, the state's legal staff, and such witnesses as the board might choose to call.

I do not think this is a correct construction of the statute. Until such time as the court sees proper to say what the Act means, it is not appropriate for a dissenting judge to undertake that task in a detailed sense. Rather, I prefer to rest my point of disagreement upon the proposition that circuit court had not assumed jurisdiction of the board's conduct; and, this being true, the Chancellor had power to compel obedience to the policy declared by the General Assembly. The charges against Schirmer, whether true or false, are not privileged communications or matters. Evidence tending to prove that a physician

procured his license fraudulently is not to be classed as "information concerning individuals."

One whose profession is regulated by law, and who thereby becomes a licensee under restrictions imposed for the public good, must accept the benefits with such reasonable restrictions as the state may impose. Whether Act 343 was wise or improvident (and I am personally persuaded that implicit in the mandate the good far outweighs objections that have been urged) is a determination for the state's policy-forming department to make, as distinguished from the courts.

I would therefore hold that the mandatory order was properly issued, thus putting into effect what the General Assembly clearly intended, and obviating the probability that the issue will be back for a second or a third review. Appellate indecision should not be permitted to militate against expeditious hearings openly conducted.