Bertha WEBB *v.* The Honorable Todd HARRISON,
Circuit Judge of the Second Judicial
Circuit of the State of Arkansas

CR 76-236                                   547 S.W. 2d 748

Opinion delivered March 14, 1977
(In Banc)

*Scott L. Kirkpatrick III* and *E. C. Took Gathings,* for peti-
tioner.

*Bill Clinton,* Atty. Gen., by: *Joseph H. Purvis,* Asst. Atty. Gen., for respondents.

DARRELL HICKMAN, Justice. Bertha Webb filed a petition in this court asking for a writ of prohibition to stop Circuit Judge Todd Harrison from proceeding with the trial of her case in Poinsett County. She is charged with forgery and uttering of a check. We granted a temporary stay of the trial pending a decision by the full court.

Webb argues this court should grant a writ of prohibition because she was denied a speedy trial, an order dismissing her case was illegally set aside, and the circumstances of the case warrant the writ.

The deputy prosecuting attorney of Poinsett County charged Webb in July, 1975; however, after a personal investigation, he decided the charges should be dismissed. He made an oral motion before Judge Harrison in October, 1976 to *nolle prosequi* the case. It is disputed whether or not the judge took this motion under advisement and later ruled on it. The deputy states in an affidavit that Judge Harrison did not state to him he was taking the motion under advisement. Judge Harrison, in a signed order that was not filed until December the 30th, recited the motion was taken under advisement and overruled on the 29th of November. This order, along with several others, was filed on the 30th of December. The orders were dated the 28th of December but entered *nunc pro tunc* to dates in October. The orders were: an order granting a motion for a speedy trial; an order denying a motion to *nolle prosequi* the case, and an order setting the matter for trial December 29th.

After the October hearing, but before any written orders were filed by Judge Harrison, the prosecuting attorney made a motion to dismiss the case with prejudice before Judge Gerald Pearson, a judge in the same circuit. Judge Pearson signed an order dismissing the charges on the 5th of November. However, he set this order aside on the 7th of December as entered in error. There is no evidence that any of the parties received notice of Judge Pearson's order setting aside the order of dismissal.

We do not find in this record sufficient evidence to justify prohibiting trial because there was a denial of a speedy trial. Although the case was set several times for trial, and passed on the motions of the state, there is no evidence the petitioner's motion for a speedy trial was presented to the court until October, 1976. Also, three full terms of court did not lapse from the time Webb was arrested until the trial date in December, 1976. See *Curan v. State,* 260 Ark. 461, 541 S.W. 2d 923 (1976). These bare facts are insufficient to warrant a writ of prohibition. This does not preclude raising the same issues before or during trial.

Webb argues that the original order of Judge Pearson dismissing this case binds the state and therefore the court should be prohibited from proceeding with the trial. However, Judge Pearson set aside his order within the same term of court. The order setting aside the dismissal states that the original order of dismissal was entered in error. A trial court may set aside its own order in the same term of court without notice to the parties if the original order was entered in error.

The orders filed by Judge Harrison recite facts which are in conflict with the affidavit of the deputy prosecuting attorney, and it is not clear from the record that a writ of prohibition should be granted. We have held that a writ of prohibition is a discretionary matter and is only proper when the trial court has no jurisdiction over the person of the petitioner, is clearly warranted, and there are no disputed facts. *Pacific Mutual Life Ins. Co. v. Toler,* 187 Ark. 1073, 63 S.W. 2d 839 (1933). *Sparkman Hardwood Timber Co. v. Bush,* 189 Ark. 391, 72 S.W. 2d 527 (1934). Since the trial court still has jurisdiction and there are disputed facts, we cannot grant a writ of prohibition as a substitute for an appeal.

A prosecuting attorney and a circuit judge both have great discretion in performing their duties. The prosecutor has the discretion to file charges and the discretion to ask the court to dismiss charges. The trial court has the discretion to grant or deny a motion to dismiss charges. Based on the record before us, we cannot say there is evidence of abuse of authority by either official. The orders filed in this case do not preclude further motions before trial. We cannot presume

that the public officials will not do their duty, therefore, the petition will be denied.

CONLEY BYRD, Justice, dissenting. I disagree with the majority first because I think Bertha Webb has been denied a speedy trial within the meaning of Arkansas Constitution Art. 2 § 10 and the Sixth Amendment to the United States Costitution, and second because we should emphasize and use our "superintending control over all inferior Courts" so as to correct a manifest injustice.

The facts are not in dispute. The record shows that Bertha Webb operates the Webb Printing Company in Memphis, Tennessee. Some two months before the forged check was passed, Bertha Webb's purse containing her billfold and driver's license was stolen from a Memphis restaurant. On July 2, 1975, a woman passed a forged check of Mrs. Gene Thompson at the Marked Tree Bank in the amount of $4,850.00. That woman volunteered the driver's license of Bertha Webb to the bank teller for identification. On July 29, 1975, Michael Everett, Deputy Prosecuting Attorney, acting on behalf of David Burnett, Prosecuting Attorney for the Second Judicial District, filed a felony information in the Poinsett Circuit Court charging forgery and uttering against Bertha Webb. Bertha Webb's defense from the beginning was an alibi. The case of *State of Arkansas v. Bertha Webb*, #CR75-63, was set for trial at the October 1975 term of Poinsett County Circuit Court, again on March 8, 1976 and once again October 14, 1976. Even though Bertha Webb was ready for trial at each setting, the case was passed each time on motion of the State. On July 10, 1976 Bertha Webb filed a motion demanding a speedy trial. In the meantime, the State through its duly constituted authorities had interviewed all of Bertha Webb's alibi evidence and had concluded that Bertha Webb was innocent of the charges filed against her. After Bertha Webb filed a motion to dismiss for lack of a speedy trial on October 28, 1976, the deputy prosecuting attorney with the consent of the prosecuting attorney recommended to Judge Gerald Pearson, who held the first week of the October 1976 term of criminal court in Poinsett County, that the motion to dismiss be granted. Pursuant to that motion and recommendation, Judge Gerald Pearson entered an order on

November 10, 1976 dismissing with prejudice the charges against Bertha Webb. Thereafter and without notice to Bertha Webb, Judge Gerald Pearson entered an order dated December 8, 1976 which set aside the November 10, 1976 order. The respondent Judge Todd Harrison, who had been holding the clerk files in the case of *State of Arkansas* v. *Bertha Webb*, # CR75-63, caused counsel for Bertha Webb on December 13, 1976, to be notified that the charges against her had been set for trial on December 29, 1976, the fourth day after Christmas and the third day before New Years.

Bertha Webb's assertion that it will be necessary to have 17 witnesses from the State of Tennessee to present her defense is not challenged by the respondent.

For informational purposes, the affidavits of Michael Everett and David Burnett are attached to this opinion as appendix "A" and appendix "B" respectively.

In *Barker* v. *Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), the Court discussed what constituted a denial of a speedy trial and there stated:

"A balancing test necessarily compels courts to approach speedy trial cases on an ad hoc basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.

The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case. To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex con-

spiracy charge.

Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighed less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay."

\* \* \*

"A fourth factor is prejudice to the defendant. Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown."

The securing of out-of-state witnesses pursuant to Ark. Stat. Ann. § 43-2005 and § 43-2006 (Repl. 1964), requires appearances in the courts of both the State issuing the request and the State in which the witness is present. Furthermore, there is a 1,000-mile limitation. To secure the attendance of the necessary witnesses from December 13th to December 29th would be a Herculean feat in itself since the statutes and the Uniform Act to Secure the Attendance of Witnesses from Without the State in Criminal Cases both

require that proper notice be given to a witness before a hearing can be held to secure his attendance.

Even if it could be assumed that all of Bertha Webb's witnesses were willing to voluntarily appear in her behalf, still the actions of the courts of this State have immeasurably prejudiced the rights of Bertha Webb. After the entry of the November 10, 1976 dismissal with prejudice, Bertha Webb's witnesses had no reason to keep her informed of their whereabouts. Realistically speaking, it would be near impossible to bring together 17 people on short notice during the rushed period between Christmas and New Years for many people have made vacation arrangements for travel and made plans with family far in advance of the holidays. However, without having properly subpoenaed her witnesses, the trial court could have forced Bertha Webb to continue the trial on the theory that she had been dilatory. Under such circumstances, the cases before this Court all hold that the trial court does not abuse its discretion. However, if no prejudice has been shown for delay, one should consider the fact that neither Bertha Webb, her counsel nor the deputy prosecuting attorney knew that Gerald Pearson had set aside the November 10th order of dismissal with prejudice until this matter came up for temporary hearing in this Court on December 22, 1976.

In my opinion, the facts demonstrating prejudicial delay in the prosecution of this case are further magnified by the fact that the duly elected Prosecuting Attorney of the Second Judicial District, after a thorough investigation of the witnesses, has concluded that Bertha Webb is innocent of the charges. To me it is a disgrace to any government to permit a trial judge to sit *mutely* behind the log of judicial discretion in refusing to dismiss a criminal prosecution of a felonious crime after the State has conceded that the defendant is innocent. Nor can I think of any greater prejudicial delay than the delay in the dismissal of the defendant in that situation.

Concededly, Ark. Stat. Ann. § 43-1230 (Repl. 1964), provides that "No attorney for the State shall enter a nolle prosequi on any indictment, or in any other way discontinue or abandon the same, without the leave of the court in which such indictment is pending being first entered on the

minutes." However, the power of the court in such cases being judicial, it is not absolute and it cannot refuse a nolle prosequi without any valid reason. See *State ex rel Pilkinton, Prosecuting Attorney v. Bush, Judge,* 211 Ark. 28, 198 S.W. 2d 1004 (1947), where we had before us Ark. Stat. Ann. § 24-119, which authorizes the prosecuting attorney to appoint deputies "provided, that such appointment shall not take effect until approved, in writing, by the judge of the circuit court of such circuit. . . ." There James Pilkinton, the duly elected prosecuting attorney, had designated Henry Woods to be his deputy and the respondent Dexter Bush, the Circuit Judge, filed a response asserting that he had the right without any reason to disapprove the appointment of Henry Woods. While we recognized that the approval or disapproval of the appointment of a deputy prosecuting attorney was a matter within the discretion of the trial judge, we there said:

> "The power of the circuit judge being judicial, it is not absolute; and he does not have the right to refuse, without any valid reason, to approve an appointment of this kind."

While the writ of mandamus was denied in that instance, we did so without prejudice and pointed out that the trial judge's discretion was subject to our review on certiorari under the superintending control given to this Court under Art. 7 §4 of the Constitution of Arkansas. I would here treat Bertha Webb's petition as a request for a writ of certiorari and discharge her.

For the reasons stated I respectfully dissent.

## APPENDIX A

Michael Everett, being first duly sworn, makes oath that:

1.   At all times herein mentioned, I was duly appointed Deputy Prosecuting Attorney for Poinsett County, Arkansas, and have personal knowledge of the matters stated herein.

2.   On July 29, 1975, I filed a felony information on behalf of David Burnett, Prosecuting Attorney for the Second

Judicial District, in Poinsett Circuit Court against Bertha Webb charging forgery and uttering, probable cause being based on the fact that Bertha Webb's name was on the back of the check that was forged.

3.  The case of State of Arkansas vs. Bertha Webb was set for trial during the October 1975 term of Poinsett County Circuit Court, again on March 8, 1976, and again on October 14, 1976, but the trial was continued on each setting on the Motion of the State of Arkansas. At no time was there a continuance on Motion of Bertha Webb, who has been ready for trial on each setting.

4.  From the moment that Bertha Webb was arrested in Memphis, Tennessee, I have had numerous discussions about the case with her attorneys, who have vigorously maintained that Bertha Webb is innocent.

5.  I have kept David Burnett, Prosecuting Attorney for the Second Judicial District, thoroughly informed of the status and developments in the case of State vs. Bertha Webb from the onset.

6.  A representative of the State was requested by Bertha Webb's attorney to meet in Memphis, Tennessee and examine all of her proof.

7.  During the March 1976 term, I went to Memphis, Tennessee accompanied by Owen Miller, special investigator of the Prosecuting Attorney, and met with Bertha Webb and her attorneys and interviewed the following alibi witnesses who were present at the meeting: Fred Stewart, Linda Moitozo, Robert Kirkpatrick, Patricia Capos, Isaac Martin, Andy Thompson, Marvin Sites, and Brooks Webb. These alibi witnesses were sound and impressive in their specific reasons for recalling the date in question. Next I examined the time cards of Webb Printing Company, kept at 6-minute intervals, which I concluded to be admissible under the business records act and these time cards substantiated the testimony of the alibi witnesses that Bertha Webb was in Memphis the entire day on which the check was passed in Marked Tree, Arkansas. I further examined the written statements of two additional witnesses, which showed that

Bertha Webb's purse had been stolen from a Memphis restaurant on May 10, 1975 (two months before the forged check was passed). I examined Bertha Webb's application for a new Tennessee driver's license, which was made before the check was passed. Next I reviewed the affidavit of Herbert A. Taylor, M.D., Bertha Webb's physician, which substantiated that the physical description of Bertha Webb was different from that given by the bank teller of the woman who passed the check.

Finally I interviewed Earl P. Davenport, handwriting expert, whose opinion was that the forged check was made by tracing a previous check of the victim, Mrs. Thompson, that had been payable to Creative Bath Kitchens, a Memphis concern doing business with the victim. Bertha Webb had nothing to do with Creative Bath Kitchens. The attorneys for Bertha Webb had turned up the check from which the forgery was made, by making a transparency of the forged check and comparing it with numerous checks of Mrs. Thompson until they found the one that matched. Bertha Webb's attorneys brought to my attention the name of a woman who could have had access to the check and who fit the description of the person who passed the check and whom they believed to be the likely suspect for the forgery.

8.   After I returned from the Memphis meeting, I informed David Burnett of the substance of proof shown to me and I told him that in my opinion, Bertha Webb was innocent, the State could not convict her, and the case should be dismissed.

9.   David Burnett agreed with my conclusions that the case should be dismissed against Bertha Webb.

10. At all times after the Memphis meeting and after conferring with David Burnett, I advised the attorneys for Bertha Webb that a motion to dismiss would be made.

11. On October 14, 1976, I made an oral motion before Judge Todd Harrison for nolle prosequi to which Judge Harrison replied that he didn't want to do it then, as he wanted to talk to Fred Odum of the Arkansas State Police about it, but at no time did Judge Harrison state to me that

he was taking the motion under advisement or that the case was to be set for trial.

12. The trial was continued again on October 14, 1976, on the Motion of the State.

13. Previously on July 10, 1976, Bertha Webb had filed a motion for a speedy trial and on October 28, 1976, filed a motion to dismiss for lack of speedy trial, and I believed the motion to be well taken as the actual business of the criminal division in Poinsett County had ended in October 1976. Therefore, in November, 1976, I sent Judge Gerald Pearson the Order dismissing cause with prrejudice along with precedents for the dismissal, which was granted and entered on November 10, 1976, with the consent of David Burnett.

14. I sent the dismissal order to Judge Gerald Pearson because Judge Pearson held the first week of criminal court during the October 1976 term, which I understand was at the request of Judge Harrison who had a backlog docket in Crittenden County, and also because Judge Pearson is much faster in answering my mail than is Judge Harrison.

15. It is, and has been, the custom in the Second Judicial Circuit for orders in criminal cases to be entered by any Judge, including those who at the time might be sitting on the civil bench, in order to expedite all business of the Circuit Court.

16. I chose the motion to dismiss with prejudice, rather than Nolle Prosequi because defense counsel had made the motion, and to my mind I thought the motion to be well taken, and I believed it was proper that the information be dismissed with prejudice, as a nolle prosequi would leave the case open to be refiled, and I didn't believe Bertha Webb to be guilty.

/s/ Michael Everett
Deputy Prosecuting Attorney
for Poinsett County, Arkansas

STATE OF ARKANSAS
COUNTY OF POINSETT

Sworn to and subscribed before me this the 4th day of January, 1977.

/s/  Darlene Lagrove
Notary Public

My Commission Expires:
3-24-80

## APPENDIX B

David Burnett, being first duly sworn, makes oath that:

### I

At all times mentioned, I was the duly elected Prosecuting Attorney for the Second Judicial District of Arkansas, and have personal knowledge of the matters stated herein.

### II

On July 29, 1975, Michael Everett, Deputy Prosecuting Attorney, filed a felony information on my behalf aainst Bertha Webb in Poinsett Circuit Court charging forgery and uttering.

### III

The case of State of Arkansas vs. Bertha Webb was set for trial during the October 1975 term of Poinsett Circuit Court, again on March 8, 1976, and again on October14, 1976, but the trial was continued on each setting on the Motion of the State of Arkansas; at no time was there a continuance on the Motion of Bertha Webb.

### IV

I have been personally involved in the case of State vs. Bertha Webb, having prepared it for trial on two settings, and having had numerous consultations with Michael Everett and Bertha Webb's lawyers about the case.

## V

The attorneys for Bertha Webb requested that a representative of the State come to Memphis, Tennessee, and meet with them to review the documentary evidence of Bertha Webb, and to interview her witnesses and to interview Bertha Webb and a handwriting expert.

## VI

Michael Everett, Deputy Prosecuting Attorney, attended the meeting requested by defense counsel on behalf of myself and the State and upon his return from said meeting gave me his findings which are set forth in the Affidavit of Michael Everett.

## VII

Michael Everett advised me that, in his opinion, after examining the proof on behalf of the Defendant, Bertha Webb is innocent, and I agreed with his conclusion that the State of Arkansas could not prove Bertha Webb guilty of forgery and uttering, and that the case should be dismissed.

## VIII

The attorneys for Bertha Webb informed me that their investigation had caused them to conclude that another person, not Bertha Webb, had committed the crime, and, in my opinion, a further investigation by the State of Arkansas should be made in regard to the guilt or innocence of said party identified by the attorneys for Bertha Webb.

## IX

Because of my belief that the State of Arkansas could not convict Bertha Webb, and because I believe it my duty as Prosecuting Attorney, representing the State of Arkansas, not only to prosecute persons I believe are guilty, or may be guilty of a crime, but also not to prosecute persons who are not guilty and cannot be convicted, and in view of the opinion of Michael Everett that Bertha Webb was innocent, I agreed to a dismissal of the action, which was granted by Judge Gerald

Pearson on November 10, 1976 upon application of Michael Everett.

It is, and has been, the custom in the Second Judicial Circuit for orders in criminal cases to be entered by any Judge, including those who at the time might be sitting on the civil bench, in order to expedite all business of the Circuit Court.

## XI

Insofar as I, as Prosecuting Attorney for the Second Judicial District of Arkansas, represent the State of Arkansas, the State has no further desire to prosecute Bertha Webb.

/s/ David Burnett
Prosecuting Attorney for
the Second Judicial District
of Arkansas

STATE OF TENNESSEE
COUNTY OF SHELBY

SWORN TO and subscribed before me this the 8th day of January, 1977.

/s/ John D. Richardson
Notary Public
(Seal)

My Commission Expires:
June 11, 1980