Diarl F. NOLAND *v*. STATE of Arkansas

CR 79-13                                          580 S.W. 2d 953

Opinion delivered May 21, 1979
(Division I)

*Paul Johnson,* for appellant.

*Steve Clark,* Atty. Gen., by: *Robert J. DeGostin Jr.,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Appellant Noland was charged with theft of property in violation of Ark. Stat. Ann. § 41-2203 (Repl. 1977), found guilty by the court, sitting without a jury, and sentenced to two years' imprisonment. We find no error in the appellant's two points for reversal and affirm.

Appellant first contends that the trial judge erred in refusing to honor an agreement between the deputy prosecuting attorney, Mr. Roddey, and the appellant's counsel, Mr. Rosteck, to dismiss the charge against the appellant if the stolen property, a refrigerator taken from an apartment the appellant and his wife had rented from Ben T. Newby, was returned to the owner.

Noland was arraigned on May 1, 1978, when his case was set for trial, after he had pleaded not guilty and waived jury trial. When the case was called for trial, appellant's attorney filed and presented a letter from Newby, the owner of the stolen property, which stated that he was the prosecuting witness in the case and that, inasmuch as the property involved had previously been returned to him, he desired that the charge against the appellant be dismissed. The deputy prosecuting attorney stated that the state would be willing to dismiss the charge, but that the state was ready for trial and that the matter was up to the court.

After the state presented its evidence in chief and rested, Noland's attorney asked for an opportunity to get "our witness", saying that he had not expected to try the case on the day set because he thought the court would recognize the letter signed by the prosecuting witness. The circuit judge responded that the attorney knew that the court was not in the habit of doing that.

The letter involved was the result of conversations between Rosteck and Roddey and between Rosteck and Newby. We do not agree with appellant's interpretation of

the record. He contends that it shows an outright agreement of the deputy prosecuting attorney to dismiss the charge; however, as indicated by the following colloquy among Roddey, Rosteck and the trial judge, the dismissal of charges was contingent upon the judge's agreeing to the arrangement:

MR. ROSTECK:

\*\*\* The Prosecutor and I talked about this last week, and this was our agreement that we had between the Prosecutor and I, that I would see to it this man got his refrigerator back, which he did, and, not only that, Mr. Noland had to pay some back rent which he claims was due, which he paid, too, and the man signed a letter that he did not wish to prosecute and I thought the Court would honor that, and I was not prepared to come to trial today. We've got some witnesses here who can say where this defendant was. What I'm trying to tell the Court is, this is confidential.

THE COURT:

You mean to tell me that the Prosecutor is making an arrangement with you and negotiating a plea and has led you to believe that he is running the Court here and—

MR. ROSTECK:

(Interposing) No, sir.

THE COURT:

—and you relied on it?

MR. ROSTECK:

I didn't rely on anything Judge. What I'm saying—

THE COURT:

(Interposing) Certainly you've been practicing law long enough to know that the Prosecutor has got his job and the Court has got its job, and they are not the same.

MR. ROSTECK:

Judge, I'm fully aware of that. I was not prepared to go to trial on this this morning.

THE COURT:
Well, Mr. Rosteck, this case has been set for trial two and a half months, and I don't know why not.

MR. ROSTECK:
It was because of the agreement we had with the Prosecutor and the Prosecutor asked me to call the man up, which I did, and it was satisfactory with the Prosecutor that we handle it in this manner, and we did. I'm sorry that we couldn't get over here Friday, but we couldn't get over here Friday.

THE COURT:
Is that the way it happened?

MR. RODDEY:
He — I told him that if he thought that he wanted to contact the prosecuting witness and see if it would be amenable with the prosecuting witness, that would be fine. And then in the meantime I talked with my division chief and he said that we needed to be ready to go to trial or at least have the man come here, so I told him to have Mr. Noland come here, and I said we would leave it up to you. That is my recollection. I did not — If I am stating it wrong, correct me, but that is my understanding.

MR. ROSTECK:
It was our understanding that this is what we would do, Judge, and I thought it was all right. I could see no objection except the fact that —

THE COURT:
You can't, but I certainly can, Mr. Rosteck. ***

After Rosteck stated that this was the first time in his 25 years of law practice that he had presented a "motion" signed by a prosecuting witness who did not want to prosecute, and prosecution had been "forced", the court offered to continue the trial to permit Rosteck to obtain the attendance of witnesses. On the following day, the defendant did present witnesses and testified himself.

In addition to the fact that the terms of the agreement established that the approval of the trial judge was necessary for the dismissal of the charges against the appellant, Ark. Stat. Ann. § 43-1230 (Repl. 1977) prohibits any prosecuting attorney from entering a nolle prosequi, or in any way discontinuing or abandoning an indictment, without leave of the court in which such indictment is pending. Therefore, it is clear that both the agreement itself and § 43-1230 mandated the approval of the trial judge before charges pending before that judge could be dismissed.

Appellant cites two opinions of this court, *Hammers v. State,* 261 Ark. 585, 550 S.W. 2d 432, and the opinion in the same case after remand to the trial court, *Hammers v. State,* 263 Ark. 378, 565 S.W. 2d 406, in support of his contention that it was error for the court to refuse to accept the agreement to dismiss the charges. However, we do not feel that the *Hammers* decisions are supportive of this contention.

In *Hammers,* the prosecuting attorney agreed to grant Hammers immunity from prosecution in exchange for her testimony against her codefendant in a murder trial. Prior to trial, the codefendant pleaded guilty to a lesser charge. The prosecutor then brought Hammers to trial on the murder charge. She was convicted and appealed from the denial of her motion to stay the prosecution against her. This court ultimately reversed the appellant's conviction and dismissed the charge, basing that decision on equitable principles, and finding that the state took full advantage of the bargain until the codefendant pleaded guilty and offered to testify against Hammers. In the first opinion, we had said:

It is only appropriate that an accomplice who, under an agreement with the prosecuting attorney, approved by or made known to the court, that he should be immune from prosecution, testified fully and truthfully as to the whole matter charged, be vested with an equitable right to the entry of a nolle prosequi or appropriate clemency. [Citations omitted.]

Clearly a promise of immunity approved by, or with the consent of, the court, should be upheld. \*\*\*

Thus, it is obvious that *Hammers* is not controlling in this case. That case involved a bargain for testimony from a defendant on a promise of immunity, and a refusal to honor the bargain when the circumstances changed. This court held that the trial court erred in holding that Hammers was not entitled to equitable relief by enforcement of the bargain. The prosecuting attorney in the case at bar was not attempting to withdraw from a prior agreement to dismiss the charges against the appellant. Rather, he was willing to honor this agreement, provided the trial judge approved of the nolle prosequi, which was properly a condition of the agreement from the outset, because it is required by statute. This court rejected a claim by a convicted defendant that a charge ought to have been dismissed because a former prosecuting attorney had agreed to dismiss it, by merely saing, "Of course, there is nothing in this contention." See *Dillard* v. *State,* 65 Ark. 404, 46 S.W. 533. *Hammers* does not hold that any and all agreements reached between the defense and the prosecution must be upheld or enforced, regardless of the willingness of the trial judge to allow dismissal of charges. The trial judge is vested with discretion as to the entry of a nolle prosequi of charges pending before him. *Webb* v. *Harrison,* 261 Ark. 279, 547 S.W. 2d 748; Ark. Stat. Ann. §§ 43-806 and 43-1230 (Repl. 1977). Refusal to allow the dismissal of the charges in this case does not constitute an abuse of that discretion. As the circuit judge pointed out, the offense is against the state as well as against the victim.

Appellant contends that the trial judge erred in sentencing him without first making a meaningful inquiry into a presentence report. After hearing all the testimony and the arguments of counsel, and finding appellant guilty, the trial judge, after repeated insistence by Noland and his attorney that Noland was not guilty, reiterated the finding of guilt beyond a reasonable doubt, but, upon the request of Noland's attorney for probation, agreed to "pass the case over for judgment" and provided appellant with an opportunity to take a polygraph examination, but advised Noland that the results would be admitted into evidence, whether "for or against the defendant." Noland's attorney then remarked that he had requested such a test when the case first came up, but when the judge asked why the test had not been given, Noland responded that his lawyer felt like it would not be ad-

visable. Rosteck explained he then had no idea that "they" could recover the refrigerator[1] or that it would be recovered, but when Newby said that all he wanted was his refrigerator back, he saw no sense in having a polygraph test.

The trial judge asked Noland if he wanted to submit to the test and Noland responded that he did and that he wanted "to prove without a shadow of a doubt that I had nothing to do with that refrigerator." After advising Noland that he could not do that because the case had already been tried and that this step was being taken only for the purpose of sentencing, the judge stated:

> Now, you remain in constant contact with your attorney in this case, because when this is set up you had better be there and take this test. Whether you take it or not is up to you, but you will have the opportunity to take it. ***

The conclusion of the investigator who administered the polygraph examination to the appellant was that the appellant did not tell the complete truth during the examination. In the presentence report the probation officer stated that the polygraph examiner had stated, when interviewed, that a guilty knowledge of the crime, with an intent to conceal parties or facts, could result in examination results similar to those of the appellant. The probation officer also reported that Noland said that he thought he could have passed the test if it had been administered upon his arrest, rather than after the trial. The examination results, along with information about the appellant's work history and education and the statements of four character witnesses, comprised the presentence report on the appellant. The presentence report concluded the appellant "has never been in serious trouble before," "has a family to support and is of sufficient age and maturity to be considered a good prospect for a suspended sentence or probation."

---

[1] Testimony on behalf of appellant indicated that Noland's wife and mother-in-law actually returned the refrigerator. Appellant's wife said that, for some reason, she suspected that Gene Earnhart had taken the refrigerator and that, after he admitted having it and agreed to surrender it, she and her mother picked it up, put it in her mother's truck and returned it to Newby. Noland testified that he knew nothing of this.

Ark. Stat. Ann. § 41-804 (Repl. 1977) details the information to be considered in a presentence investigation and subsection (4) provides:

> Before imposing sentence, the court shall advise the defendant or his counsel of the factual contents and conclusions of any pre-sentence investigation or psychiatric examination and afford fair opportunity, if the defendant so requests, to controvert them. Sources of confidential information need not be disclosed.

Nothing in the statute requires that the trial judge follow the recommendation of the presentence report or that he specify the relative weight he attached to each element contained in the report, before he sentences a defendant. Appellant's attorney was presented ample opportunity to controvert the information in the presentence report, or to request the opportunity to do so, as indicated by the following exchange:

THE COURT:
Mr. Rosteck, I have read your letter. I've read the report, which reflects there is no prior record. I've read the polygraph examiner's record which reflects that the defendant, in his opinion, the defendant was not telling the complete truth. It's the judgment and sentence of this Court — Do you have anything else to say?

MR. ROSTECK:
I don't guess so.

THE COURT:
It's the judgment and sentence of this Court that the defendant be sentenced to the State Penitentiary for two years.

The appellant cannot now complain that the trial judge or the probation officer who made the presentence investigation should have undertaken an in-depth review of the polygraph examination with appellant, in an effort to determine which questions and answers indicated deception, when the appellant was given an opportunity, prior to sentencing, to comment on the presentence investigation and the polygraph examination. See Ark. Stat. Ann. § 43-2301 (Repl.

1977). No effort was ever made to controvert the report. The only statement ever made was Noland's remark after he was sentenced that the report showed that he did not take the refrigerator. The report does not support this statement. It only states that Noland maintained, and continued to maintain, that his statements were true.

Theft of property with a value of more than $100.00 but less than $2500.00 is a class C felony, with a sentence upon conviction of not less than two (2) years and not more than ten (10) years. Ark. Stat. Ann. §§ 41-901(1)(c) and 41-2203(2)(b) (Repl. 1977). It is within the trial judge's discretion to set the punishment for a defendant anywhere within the statutory range of punishment provided for a particular crime. Ark. Stat. Ann. § 43-2307 (Repl. 1977); *Thornton* v. *State,* 243 Ark. 829, 422 S.W. 2d 852. Perhaps the trial judge chose not to suspend the sentence of the appellant solely because of the unfavorable polygraph report, but opted for the minimum sentence due to the favorable recommendation of the presentence investigator. The record does not disclose the relative weight given to the various factors and, as stated earlier, there is no requirement that the trial judge enumerate the various considerations which made up his decision. In any event, the appellant cannot voluntarily take such an examination and then attempt to avoid unfavorable results by contending that the trial judge should have made further inquiry into the circumstances of the examination. We cannot agree with appellant's suggestion that the fact that he may have answered untruthfully in order to protect someone else should have resulted in a suspension of sentence.

We find no abuse of the trial court's discretion in the sentence imposed on the appellant, and therefore, the judgment is affirmed.

We agree. HARRIS, C.J., GEORGE ROSE SMITH and HICKMAN, JJ.