Jimmy W. GRIMMETT *v.* Tom F.
DIGBY, Circuit Judge

79-239                                          589 S.W. 2d 579

Opinion delivered November 26, 1979
(In Banc)

*Steve Clark,* Atty. Gen., by: *Alice Ann Burns,* Asst.
Atty. Gen., for petitioner.

*Lowe & Hamlin,* by: *Frank S. Hamlin,* for respondent
Home Insurance Co.

CONLEY BYRD, Justice. Petitioner Jimmy W. Grimmett,
a state policeman, while patrolling the highways and while
on regular duty as an Arkansas State Trooper, made a left
turn in front of one of Home Insurance Company's insureds
causing damages in the amount of $996.67. When Home
Insurance Company brought suit to recover the $996.67,
petitioner moved to dismiss the action on the basis that it
constituted an action against the State of Arkansas which
was prohibited by Art. 5 § 20 of the Constitution of Arkansas
and that the jurisdiction of such claims was exclusively with
the Arkansas Claims Commission. After the trial court over-
ruled petitioner's motion to dismiss, he filed his petition here
for a writ of prohibition raising the same issues.

Article V § 20 upon which petitioner relies provides:

"The State of Arkansas shall never be made defendant
in any of her courts."

We pointed out in *Kelly* v. *Wood, Circuit Judge,* 265 Ark. 337, 578 S.W. 2d 566 (1979), that an automobile negligence action for personal injuries brought against a state trooper for a violation of duty imposed upon him by law in common with all other people using the highways does not amount to an action against the State within the prohibition of Arkansas Constitution Art. V § 20 *supra.* The same principle has been recognized by most of the authorities. See *Belknap* v. *Schild,* 161 U.S. 10, 16 S. Ct. 443, 40 L. ed. 599 (1896), where it is stated:

>    ''But the exemption of the United States from judicial process does not protect their officers and agents, civil or military, in the time of peace, from being personally liable to an action of tort by a private person whose rights of property they have wrongfully invaded or injured, even by authority of the United States.''

Petitioner readily recognizes our decision in *Kelly* v. *Wood, Judge, supra,* but points out that other states with a provision similar to Art. V § 20, *supra,* have upheld tort-claim acts such as the Arkansas Claims Commission Act, Ark. Stat. Ann. § 13-1401 et seq. (Repl. 1968), and have construed such acts as giving exclusive jurisdiction of all personal injury actions against state employees to such commissions or adjudicatory agencies. In making this contention, the petitioner fails to take into consideration other provisions of the Arkansas Constitution such as Art. 2 § 7 and Art. 2 § 13.

Article 2 § 7 provides:

>    ''The right of trial by jury shall remain inviolate, and shall extend to all cases at law, without regard to the amount in controversy; . . .''

Article 2 § 13 provides:

>    ''Every person is entitled to a certain remedy in the laws for all injuries or wrongs he may receive in his person, property or character; he ought to obtain justice freely, and without purchase, completely, and without

denial, promptly and without delay, conformably to the laws.''

In *St. L., I.M. & S. Ry.* v. *Williams,* 49 Ark. 492, 5 S.W. 883 (1887), based upon the foregoing constitutional provisions, we said:

"Every one is entitled, under the Constitution, to have his rights enforced, his wrongs redressed, and his liabilities determined in the courts, whenever it becomes necessary to compel their enforcement, redress or adjustment, and, when he is liable for damages, as the appellant is in this case, to have the damages he shall pay assessed by a jury. The Legislature has no power to substitute boards of arbitration for the courts, without the consent of parties, and make their awards obligatory and the exercise of the right to seek the aid of the courts to obtain relief from a wrong, or impose upon any one a penalty for exercising such right. To make the action of such a board obligatory or impose such a penalty would be a denial of the right, or a purchase of justice, and a violation of the Constitution.''

The foregoing construction given to Art. 2 § 7 and Art. 2 § 13 made it necessary for the people of this State to amend the Constitution [Amendment #26] before a valid Workmen's Compensation law could be enacted. Such provisions would also prevent the General Assembly from giving the Claims Commission exclusive jurisdiction of tort claims against state employees or officers for their unlawful acts.

Writ denied.

HARRIS, C.J., not participating.

FOGLEMAN and HICKMAN, JJ., dissent.

JOHN A. FOGLEMAN, Justice, dissenting. I must respectfully dissent from the holding in this case, although I concurred in the result in *Kelly* v. *Wood,* 265 Ark. 337, 578 S.W. 2d 566. There is a basic difference in that case and this which is not apparent from the face of the majority opinion in

*Kelly.* It was not at all clear that Kelly was in the performance of any duty of his employment at the time of the occurrence which gave rise to the action, the trial of which he sought to prohibit. The writ of prohibition is an extraordinary and discretionary writ which should be used cautiously and never granted where the petitioner is not clearly entitled to that relief. *Henderson* v. *Dudley,* 264 Ark. 697, 574 S.W. 2d 658; *Karraz* v. *Taylor,* 259 Ark. 699, 535 S.W. 2d 840; *Wade* v. *State,* 264 Ark. 320, 571 S.W. 2d 231; *Webb* v. *Harrison,* 261 Ark. 279, 547 S.W. 2d 748. Since I did not feel that the petitioner Kelly was clearly entitled to that relief, I concurred in the result, as did the Chief Justice.

The question that concerned me in *Kelly* is not present here. We are squarely presented with the question of the liability of an Arkansas State policeman for an act done or omitted negligently while he is engaged in the performance of his duties. There can be no doubt that petitioner is a state officer. *Downey* v. *Toler,* 214 Ark. 334, 216 S.W. 2d 60. In *Downey,* we said:

> In short, Arkansas State Police are under the control of the State; they represent the State government, and — within the limits of the said Act — they are Statewide law enforcement officials.

We pointed out the nature of the functions performed by the Arkansas State Police and the department in arriving at that conclusion. The purpose cannot be better stated than it was in the first section of that act, now digested as Ark. Stat. Ann. § 42-401 (Repl. 1977), which reads:

> For the purpose of enforcing the motor vehicle laws, traffic laws and other state laws relating to protecting and properly maintaining the State Highway System of the State of Arkansas and to render more effective the apprehension of criminals and the enforcement of criminal law, there is hereby created the Department of Arkansas State Police. The police officers hereinafter provided for shall be known as ''Arkansas State Police.''

The policemen are employed strictly upon an efficiency

basis, along the lines of civil service; and, as pointed out in *Downey,* hold their offices until and unless removed for cause. Ark. Stat. Ann. § 42-406 (Repl. 1977). They are conservators of the peace and have the powers possessed by policemen in the cities and sheriffs in the counties, which they may exercise anywhere in the state, along with all the power and authority of the State Fire Marshal. They are required to cooperate with regularly constituted peace officers in the state in enforcement of the criminal laws and assist them in the apprehension of criminals. Ark. Stat. Ann. § 42-407 (Repl. 1977). They are furnished vehicles, equipment and supplies necessary for the performance of their duties, and wear insignia bearing the words "Arkansas State Police." Ark. Stat. Ann. § 42-409 (Repl. 1977). Any Arkansas State policeman has the authority, in case of emergency, to deputize any reputable citizen whenever it is deemed necessary for the proper enforcement of the law. Ark. Stat. Ann. § 42-413 (Repl. 1977). Each officer must take the oath required of public officials and furnish a surety bond. Ark. Stat. Ann. § 42-414 (Repl. 1977).

Among the important governmental functions performed by the Arkansas State Police are the following:

Patrolling the public highways, making arrests, enforcing the laws of this state relating to motor vehicles and the use of the highways; assisting in the collection of delinquent motor vehicle licenses and of gasoline tax and other taxes; determining when a person or persons are the cause of injury to the state highways and arresting persons responsible therefor and persons responsible for injury to other state property. Ark. Stat. Ann. § 42-407 (Repl. 1977).

Providing police protection benefitting any statewide function sponsored or conducted by a state agency, board or commission, state supported college or institution, or by a private non-profit association or organization on public property. Ark. Stat. Ann. § 42-407.1 (Repl. 1977).

Taking or summoning all persons arrested upon

charges of violating any of the highway laws of the state or any rules and regulations of the Arkansas Highway Commission, Transportation Commission and the Revenue Department governing the highways and any other crime punishable as a misdemeanor before the judge having jurisdiction of the offense; placing persons arrested for felonies in a county jail. Ark. Stat. Ann. § 42-408 (Repl. 1977).

Assisting in the enforcement of all laws of the state prohibiting the unlawful sale or manufacture of intoxicating liquors. Ark. Stat. Ann. § 48-1101 (Repl. 1977).

No one in state government performs any more essential or important function of state government. It is apparent that the duties performed by a state policeman are duties owed the general public.

Only a few states have a constitutional provision like Art. 5, § 20 of our constitution. One of those is the State of Illinois. The language of their constitutional provision and that of Art. 5 § 20 are virtually identical. Illinois law, like our own, exempts a state agency from liability through court action because of this constitutional provision. See *Minear* v. *State Board of Agriculture,* 259 Ill. 549, 102 N.E. 1082, Ann. Cas. 1914B 1290 (1913); *Tri-B Advertising, Inc.* v. *Arkansas State Highway Com'n.,* 260 Ark. 227, 539 S.W. 2d 430.

In *Mower* v. *Williams,* 402 Ill. 486, 84 N.E. 2d 435 (1949), the Illinois Supreme Court considered the question of liability of a highway maintenance man for ordinary negligence in light of the constitutional provision and of case law. The maintenance man was the operator of a state-owned truck with a snow plow and, while engaged in removing snow and ice from the highways, caused a collision between the truck and a privately owned automobile from which the occupants of the automobile suffered damages. The negligent act consisted of entering the intersection with the state-owned truck and snow plow, without looking in the direction from which the plaintiff's automobile was coming, and relying on the statement of a helper that it was safe to

proceed. At the close of all the evidence, a verdict was directed, partly on the basis of common law and statutory immunity. The Appellate Court reversed this action, but the Supreme Court reversed the action of the Appellate Court and affirmed the judgment of the trial court. The Supreme Court rejected the argument that the snow plow operator was liable under Illinois law which held an employee acting in a ministerial capacity liable for negligent performance of his duties. The court explained the import of such decisions on the basis that liability exists where the duty is not a public one but is a duty to the plaintiff individually, not as a member of the general public, but there is no liability for negligence in the performance of a duty to the public so long as the employee exercises his judgment and discretion fairly and honestly.

The Illinois Supreme Court said that it was apparent that the duty being performed was a duty owed the general public. In holding the highway maintenance man immune from liability for ordinary negligence, the Illinois Supreme Court said:

> In the instant case the evidence reveals that defendant was employed by the State Highway Department, that he was assigned by his superiors to be "maintenance man" on a designated strip of some 21 miles of highway. He was assigned other men as helpers and provided with equipment including the snow plow, with which to perform his various duties. He was, in general, left to his own judgment as to when and where he should perform his duties in his assigned territory and as to the manner in which he would use the State-owned equipment furnished him. Under such circumstances his duties were not within the definition of "ministerial" as announced in the Bartels case [*People* v. *Bartels,* 138 Ill. 322, 27 N.E. 1091 (1891)]. Defendant is conceded to be the agent of the State and there is no contention that the removing of the snow from the public highway at the place and time of the collision was not within the duties with which defendant was charged. The removal of snow and ice from one of the main traveled highways is absolutely essential to the welfare and safety of the

traveling public. There are few, if any, functions of public responsibility which require more prompt and effective action on the part of those charged with such duty. That the removal of such snow and ice is a governmental as distinguished from a ministerial function appears as a reasonable proposition when circumscribed by conditions necessitating the overcoming of the hazard of snow and ice, with its attending danger to life and property, especially when it is of such magnitude that private means are not adequate to deal with the problem, and where the public welfare demands and the public relies on the State to meet the problem. The defendant, as an agent of the State, was charged with a duty that was in no way fixed as to time, mode or occasion and his duty was not ministerial in character.

In a later case, the Illinois Supreme Court held that a police officer, whose city police car collided with the truck of a third party, causing the death of a pedestrian who was struck by the truck, was performing a governmental function on behalf of the municipality by which he was employed and was not liable for the death. *Taylor* v. *City of Berwyn,* 372 Ill. 124, 22 N.E. 2d 930 (1939). The city police officer, Bartunek, was pursuing an automobile in which suspected criminals were riding at the time of the collision, which occured outside the limits of the city by which Bartunek was employed. The Illinois court held that, at the time of the collision, Bartunek was in the performance of his duty as a police officer of the city by which he was employed, and that, because of this fact, a judgment against him was erroneous.

Upon similar reasoning, the Supreme Judicial Court of Massachusetts has held that a state farm officer, acting in the performance of his duty, was not liable for injuries suffered by two passengers, prisoners in the officer's custody, in a collision between an automobile being driven by the officer and another automobile. *Haberger* v. *Carver,* 297 Mass. 435, 9 N.E. 2d 305 (1937). The defendant Carver was a prison officer at the state farm. He was directed by the prison farm superintendent to take the prisoners, who were the injured plaintiffs, to the Superior Court of Suffolk County at Boston to testify in cases pending there. Because the au-

tomobiles belonging to the commonwealth were otherwise engaged, the superintendent instructed Carver to use his own automobile; however, Carver was to be compensated for its use. It was found that Carver was negligent in the operation of his automobile. On that basis, the trial court held against Carver, and denied his motion for a favorable finding on the ground that he, at the time of the collision, was a state officer, acting in the performance of his duty, having the plaintiff in his official custody for transportation, and was not liable to the plaintiff, even though Carver may have been negligent in the operation of the automobile.

On appeal, the Massachusetts court pointed out that, by statute, Carver was a subordinate officer appointed by the superintendent subject to the approval of the commissioner of correction. Consequently, it was held that Carver was entitled to his request for the following rulings by the trial court:

> "The defendant at the time of the accident was a state officer acting in the performance of his duty, having the plaintiff in his official custody for transportation, and therefore the defendant is not liable to the plaintiff even though the defendant may have been negligent in the operation of his automobile."

> "That on all the evidence the plaintiff is not entitled to recover."

I am aware of the fact that there are decisions to the contrary in other jurisdictions. I am not aware of one in a jurisdiction having a constitutional provision such as ours.

We did say in *Tri-B Advertising, Inc.* v. *Arkansas State Highway Com'n.,* supra, that the "State of Arkansas, its officers and its agencies" could not be made a defendant in any of its courts, and that "[t]his immunity extends to suits for torts." Although, in the context of that opinion, the statement as to officers might be taken as dictum, I submit that it is a proper approach to the question. The holdings of the Illinois and Massachusetts courts are sound and well reasoned. The state can only act through such officers as

Grimmett in enforcing its laws. Such officers are often required to respond in emergency situations, and they should be able to do so without being restrained by concern over their potential liability for ordinary negligence, for which, in the ordinary case, the employer would be liable under the doctrine of respondeat superior. As a result of this decision, the state will be compelled to provide protection to state officers against the payment of damages in such situations because there is no more important governmental function than that of the state police, in a society based upon the rule of law. Consequently, indirectly, though not directly, the purpose of Art. 5, § 20 will be subverted by requiring payment of damages because of the ordinary negligence of state officers in cases such as this. This action violates the spirit, if not the letter, of our constitutional provision.

I am authorized to state that Mr. Justice Hickman joins in this opinion.