Karen R. Baker, Justice, dissenting.
*657 I dissent for the reasons stated in my dissent in Arkansas Community Correction v. Barnes , 2018 Ark. 122, 542 S.W.3d 841.
Josephine Linker Hart, Justice, dissenting.
I dissent. The United States Supreme Court looks to several factors when determining whether to afford a prior decision stare decisis. Among those factors are the quality of the decision's reasoning, the workability of the rule it established, its consistency with other related decisions, developments since the decision was handed down, and reliance on the decision. Janus v. Am. Fed'n of State, Cty. & Mun. Employees, Council 31 , --- U.S. ----, 138 S. Ct. 2448, 2478-79, 201 L.Ed. 2d 924 (2018). Literally all[1] of these factors weigh against affording stare decisis to Andrews[2] (and its progeny most relevant here, Barnes[3] ), the sovereign immunity decision that the majority suggests controls the outcome of this case.[4]
This court handed down Andrews on January 18, 2018, and the majority held as follows:
[W]e acknowledge that the General Assembly enacted the AMWA and allowed "an action for equitable and monetary relief against [the State]." Ark. Code Ann. § 11-4-218(e). Nevertheless, we *658 conclude that the legislative waiver of sovereign immunity in section 11-4-218(e) is repugnant to article 5, section 20 of the Arkansas Constitution. In reaching this conclusion, we interpret the constitutional provision, "The State of Arkansas shall never be made a defendant in any of her courts," precisely as it reads.
Andrews , 2018 Ark. 12, at 10, 535 S.W.3d 616, 623. Pursuant to this rationale, the majority dismissed the plaintiff-appellee's claim against his State employer for unpaid wages brought pursuant to the Arkansas Minimum Wage Act (AMWA). Id. Effectively, a majority of this court held that the State of Arkansas does not have to pay its employees minimum wage, or at least that no court can make the State pay its employees their wages when it has declined to do so. Id. As one circuit judge put it shortly thereafter, this was a "sea change" that significantly abridged the then-acknowledged exceptions to sovereign immunity-according to Andrews , citizens can no longer recover any legal damages from the State, even if the State has passed a law that specifically says so. Id. Instead, the majority opined, these damaged individuals can try their luck with the Arkansas Claims Commission, a politically created forum where the merits and value of any claim are within the discretion of appointed commissioners, and not subject to the constitutional guarantees of a jury trial or a legal remedy. Id. at 12, 535 S.W.3d at 623.
However, in neither Andrews nor any case handed down by this court since has the majority set forth an actual constitutional analysis of the issue in question. A constitutional analysis would, at the very least, analyze the constitution-all of it, together. See , e.g. , Ward v. Priest , 350 Ark. 345, 382, 86 S.W.3d 884, 898 (2002) ("It is a rule of universal application that the Constitution must be considered as a whole, and that, to get the meaning of any part of it, we must read it in the light of other provisions relating to the same subject."). This analysis would show that the protection afforded to the State of Arkansas through article 5, section 20 of the Arkansas Constitution --"[th]e State of Arkansas shall never be made defendant in any of her courts"--is not enforceable against the "Declaration of Rights" guaranteed to the citizens by article 2 of the very same Arkansas Constitution. For example, article 2, section 13 provides that "[e]very person is entitled to a certain remedy in the laws for all injuries or wrongs he may receive in his person, property or character; he ought to obtain justice freely, and without purchase; completely, and without denial; promptly and without delay; conformably to the laws. " (Emphasis added.)[5] Additionally, article 2, section 7 provides that "[t]he right of trial by jury shall remain inviolate, and shall extend to all cases at law.... This amendment to the Constitution of Arkansas shall be self-executing and require no enabling act[.]" Most importantly, article 2, section 29 excepts these rights away from interference through the powers of State government-"we declare that everything in this article is excepted out of the general powers *659 of the government." (Emphasis added.)[6]
Additionally, the Andrews majority's excuse for disregarding article 2 was entirely baseless. The majority specifically ignored any of the plaintiff-appellee's asserted arguments relating to article 2, offering as explanation that the plaintiff-appellee failed to obtain a ruling on any such argument below, without more. 2018 Ark. 12, at 12, 535 S.W.3d at 623. The majority was incorrect. While this court generally requires an appellant to raise an issue to the trial court and to obtain a ruling on that issue before this court will address that issue on appeal, this court can affirm a trial court's decision in favor of the appellee for any legitimate reason, regardless of whether the specific reason was raised or ruled upon below. See , e.g. , Alexander v. Chapman , 299 Ark. 126, 130, 771 S.W.2d 744, 746-47 (1989) ("It also makes no difference that the trial court's decision to overrule the appellant's objection was not based on the law of the case doctrine. We will affirm the court's ruling if it is correct for any reason. The appellee was not bound to present to the trial court every conceivable reason for overruling the appellant's objection.") (internal citations omitted).
The majority maintained a similar tactic in Barnes by throwing out the plaintiff-appellee's claim brought pursuant to the Arkansas Whistle-Blowers Act (AWBA), the same claim and legal authority through which Singer seeks relief in this case. See Barnes, supra. The Barnes majority simply stated the facts, cited Andrews , and moved on. Id. The majority did not make any effort to square its continued interpretation of article 5, section 20 with the rights guaranteed by article 2 of the very same Arkansas Constitution. Id.
In the present case, we have another AWBA claim, and the majority says Andrews and Barnes control. To its credit, this time the majority cites Bryant v. Arkansas State Highway Commission , 233 Ark. 41, 342 S.E.2d 415 (1961), which it offers for the proposition that one's right to a legal remedy guaranteed by article 2, section 13 is subservient to the State protection contained in art. 5, § 20. However, the majority's reliance upon Bryant , an opinion this court issued just short of six decades ago, is misplaced.
As an initial matter, this court faced a situation in Bryant that was wildly different from this case. There, the plaintiff-appellants, owners of a hotel, were attempting to persuade the courts to issue a writ of mandamus that would compel the state highway commission to file a condemnation lawsuit against the owners themselves, to the end that a forum would be created where the owners might recover for alleged property damages resulting from the closure of nearby thoroughfare exits-a far cry from the AWBA claim at issue here. Bryant , 233 Ark. at 42-43, 342 S.W.2d at 416. Additionally, in denying the owners' alleged claim, the Bryant court's consideration of article 2 was confined to section 13; the Bryant court did not in any way address how any of the other provisions in article 2 would affect its analysis. Bryant, supra.
*660 Moreover, to the extent Bryant ever stood for the constitutional interpretation the majority suggests it does, that interpretation was necessarily rejected eighteen years later in Grimmett v. Digby , 267 Ark. 192, 589 S.W.2d 579 (1979), overruled on other grounds by Craven v. Fulton Sanitation Serv., Inc. , 361 Ark. 390, 206 S.W.3d 842 (2005). In Grimmett , an insurance company sought to recover for sums paid to its insured after a state-trooper vehicle had allegedly caused a traffic accident and that resulted in damages to the insured. Id. This court was presented with the argument that the General Assembly's creation of the Arkansas Claims Commission, along with the existing state protection afforded by article 5, section 20 of the Arkansas Constitution, meant that the Arkansas Claims Commission had exclusive jurisdiction over claims against state employees.[7] Id. at 193, 589 S.W.2d at 580. Utilizing our workers'-compensation laws as an illustrative example, this court offered a detailed explanation as to why embracing such an argument would contradict our constitution, an explanation that I quote at some length here:
In making this contention, the petitioner fails to take into consideration other provisions of the Arkansas Constitution such as Art. 2 s 7 and Art. 2 s 13.
Article 2, § 7 provides:
"The right of trial by jury shall remain inviolate, and shall extend to all cases at law, without regard to the amount in controversy; ..."
Article 2, § 13 provides:
"Every person is entitled to a certain remedy in the laws for all injuries or wrongs he may receive in his person, property or character; he ought to obtain justice freely, and without purchase, completely, and without denial, promptly and without delay, conformably to the laws."
In St. L., I. M. & S. Ry. v. Williams , 49 Ark. 492, 5 S.W. 883 (1887), based upon the foregoing constitutional provisions, we held:
"Everyone is entitled, under the Constitution, to have his rights enforced, his wrongs redressed, and his liabilities determined in the courts, whenever it becomes necessary to compel their enforcement, redress or adjustment, and, when he is liable for damages, as the appellant is in this case, to have the damages he shall pay assessed by a jury. The Legislature has no power to substitute boards of arbitration for the courts, without the consent of parties, and make their awards obligatory and the exercise of the right to seek the aid of the courts to obtain relief from a wrong, or impose *661 upon any one a penalty for exercising such right. To make the action of such a board obligatory or impose such a penalty would be a denial of the right, or a purchase of justice, and a violation of the Constitution."
The foregoing construction given to Art. 2 s 7 and Art. 2 s 13 made it necessary for the people of this State to amend the Constitution (Amendment # 26) before a valid Workmen's Compensation law could be enacted. Such provisions would also prevent the General Assembly from giving the Claims Commission exclusive jurisdiction of tort claims against state employees or officers for their unlawful acts.
Id. at 193-93, 589 S.W.2d at 580-81 (emphases added).
In my view, article 5, § 20 cannot be construed to deny any of the rights guaranteed by article 2 without a constitutional amendment so permitting. A clear reading of Andrews shows that the majority opinion cannot possibly comport with our founding people's instruction to their State government set forth in article 2, section 29: "We declare that everything in this article is excepted out of the general powers of the government; and shall forever remain inviolate[.]" The majority continues to refuse to address this issue.
I dissent.

While the focus of this dissent is on "the quality of the [Andrews ] decision's reasoning," make no mistake that the other enumerated factors weigh against stare decisis as well. As I observed in Arkansas Oil & Gas Comm'n v. Hurd :
The untenability of our current sovereign immunity jurisprudence, demonstrated by cases like the one currently before us, is lost neither on the parties to this case nor on the rest of the Arkansas legal community. The fallout from Board of Trustees of the University of Arkansas v. Andrews , 2018 Ark. 12, 535 S.W.3d 616 has manifested in all forms of state court litigation related to government affairs, with litigants from both the public and private spheres clamoring to either weaponize or escape from Andrews and its undefined limitations, and our law is suffering because of it. This court must "wipe the slate" on sovereign immunity, in lieu of continuing this tired and awkward endeavor to develop our jurisprudence within Andrews and its progeny. See , e.g. , Walther v. FLIS Enters., Inc. , 2018 Ark. 64, 540 S.W.3d 264 (sovereign immunity is an affirmative defense that must be raised in a responsive pleading) and Arkansas Dep't of Veterans Affairs v. Mallett , 2018 Ark. 217, 549 S.W.3d 351 (without overruling FLIS , failure to raise sovereign immunity as affirmative defense in responsive pleading simply does not matter).
We cannot keep doing this. The Andrews decision was improvident for its profound lack of any actual constitutional analysis. See Arkansas Community Correction v. Barnes , 2018 Ark. 122, 542 S.W.3d 841 (Hart, J., dissenting). The notion that the drafters of our constitution intended to allow our state government to assert sovereign immunity against the citizens of Arkansas in cases like Andrews and Barnes , where the government is accused of acting illegally and unconstitutionally, is simply wrong. Furthermore, the failure by the majority in Andrews to define the majority opinion's limitations, especially when the dissent so desperately endeavored to point out the majority opinion's dangerous implications, has made this situation far worse. It is time for this court to simply acknowledge as much, so we can move forward.
2018 Ark. 397, at 13-14, 564 S.W.3d 248, 256 (Hart, J., concurring).

Bd. of Trustees of Univ. of Ark. v. Andrews , 2018 Ark. 12, 535 S.W.3d 616.

Ark. Cmty. Corr. v. Barnes , 2018 Ark. 122, 542 S.W.3d 841.

See also Pearson v. Callahan , 555 U.S. 223, 235, 129 S. Ct. 808, 818, 172 L.Ed. 2d 565 (2009) ("Where a decision has been questioned by Members of the Court in later decisions and [has] defied consistent application by the lower courts, these factors weigh in favor of reconsideration.") (internal citations omitted).

Here is, or was, the constitutional prescription that, together with article 2, section 29 (see ante , fn. 6), allowed for the legislative waiver exception to sovereign immunity, the very idea of which the Andrews majority suggested was "repugnant" to the same constitution I am quoting from. 2018 Ark. 12, at 10, 535 S.W.3d at 623. "Laws" like the AMWA and the AWBA, which protect against "injuries or wrongs [one] may receive in his person, property, or character," are no less constitutional than the law that created the Arkansas Claims Commission; in fact, those among the former are more so because they respect article 2, section 7's jury-trial guarantee, whereas the latter does not.

Again, no provision similar to article 2, section 29 existed in the 1868 Arkansas Constitution. The Andrews majority hung its hat on the distinction between the 1868 version of article 5, section 45 and the 1874 version of article 5, section 20, the former of which expressly provided that the legislature could decide when to waive the State's sovereign immunity. Andrews , 2018 Ark. 12, at 10-11, 535 S.W.3d at 622. Acknowledging the new article 5, section 20 while simultaneously ignoring the new article 2, section 29 defied the intent of our founders.

I am mindful that part of the Grimmett court's analysis involved a prior decision in which this court held that a suit against a state trooper involved in a highway traffic accident does not in and of itself amount to a suit against the State. See Grimmett v. Digby , 267 Ark. 192, 193, 589 S.W.2d 579, 580 (1979) ("We pointed out in Kelly v. Wood, Circuit Judge , 265 Ark. 337, 578 S.W.2d 566 (1979), that an automobile negligence action for personal injuries brought against a state trooper for a violation of duty imposed upon him by law in common with all other people using the highways does not amount to an action against the State within the prohibition of Arkansas Constitution Art. V s 20."). A close review of Grimmett shows that the petitioners were nonetheless arguing that the plaintiff was barred from bringing the lawsuit against the state trooper in State court. Id. ("Petitioner readily recognizes our decision in Kelly v. Wood , Judge , ... but points out that other states with a provision similar to Art. V § 20 ... have upheld tort-claim acts such as the Arkansas Claims Commission Act ... and have construed such acts as giving exclusive jurisdiction of all personal injury actions against state employees to such commissions or adjudicatory agencies.").