Roger MEARS, Jr., Mrs. Phyllis BRANDON
and Bob SCOTT, as Members of the Board of
Election Commissioners of Pulaski County,
Arkansas *v.* CITY of LITTLE ROCK

74-82                                    508 S.W. 2d 750

Opinion delivered April 8, 1974

*Lee A. Munson,* Pros. Atty., 6th Dist., and *Tom Tanner,* Dep. Pros. Atty., for appellants.

*Joseph C. Kemp* and *Riddick Riffel,* for appellee.

CARLETON HARRIS, Chief Justice. This litigation refers to the election of a Board of Directors of a "Management Form of City Government". The 1973 General Assembly of the State of Arkansas enacted legislation which became Act 168 of 1973, this act amending Ark. Stat. Ann. § 19-704 (Repl. 1968). The principal section amended was subsection (c). That section, before the amendment, read as follows:

> "(c) Except in the instances where Directors are elected at special elections as provided in Sections 2 (§ 19-702) and 13 (§ 19-713) of this Act, the members of the Board of Directors shall be elected at the general elections held biennially for the election of State and County offices; each such general election to be utilized for the election of successors to those Directors whose terms expire on December 31 next following said election."

Following the amendment, the subsection reads in this manner:

> "(c) Except in the instances where Directors are elected

at special elections as provided in Section 2 and 13 of this Act, the members of the Board of Directors shall be voted on at the preferential primary election held on the Tuesday two weeks prior to the general primary election and if none of the candidates for a position receives a majority of the votes cast in said election, then the names of the two candidates in each position receiving the greatest number of votes shall have their names placed on the ballot at the general primary election, each such preferential and regular primary election to be utilized for the election of successors to those Directors whose terms expire on December 31 next following said election."

The most confusing part of the legislation comes in the next subsection, (d), which was maintained intact except that the word "general" was changed to read "regular". That subsection is as follows:

"(d) All regular and special elections of Directors shall be nonpartisan, the ballots to show no party designation. In all regular and special elections, each candidate for the office of Director shall be elected by the electors of the city at large. A Director shall not be prohibited from holding successive terms of office."

It is agreed between the litigants that the purpose of the amendment was to provide that the final election of City Directors would be the primary election, i.e., no general election would be necessary, the intent of the General Assembly apparently being to provide for a run-off, if necessary, wherein City Directors would be elected by a majority of the citizens of the municipality. Interestingly enough, however, the act still contains unrepealed language found in Ark. Stat. Ann. § 19-705 (Repl. 1968) which provides, "it being the intention of this Act that the general election machinery of this State, now or hereafter existing, shall be utilized in the holding of all general and special elections authorized under this Act."

In fact, there is no repealing clause in the act and any possible repeal of conflicting portions would have to be by im-

---

[1]The only other amendments in the act were the substitution of the word "regular" for "general" in subsections (e), (f), and (g).

plication, such type of repeals not being favored under the law.[2]

In *Selig v. Powell*, 253 Ark. 555, 489 S.W. 2d 484, quoting an earlier case[3], we said:

> "Repeals by implication are not favored, and there are many instances in which particular statutes are held not to be repealed by implication. As a general rule, the legislature, when it intends to repeal a statute, may be expected to do so in express terms or by the use of words which are equivalent to an express repeal, and an intent to repeal by implication, to be effective, must appear clearly, manifestly, and with cogent force."

Other inconsistencies and ambiguities in the act could be mentioned, and it is true that the provisions appear most impracticable, for though the statute provides that the Directors shall be elected by a nonpartisan vote, the election itself, under the amended statute, would be held at the Democratic and Republican primaries. Accordingly, we would have persons being voted on at these primary elections who were not required to conform with party regulations. Both the Democratic and Republican primaries would have to be utilized; it would appear that the total number of votes would be ascertained by adding the total vote received by persons in the Democratic primary to the total vote received by persons in the Republican primary, and the same procedure would be followed in case of a run-off. It is even possible that one of the parties would have to conduct a primary where no party candidates were involved, simply as a matter of conducting a run-off election for nonpartisan candidates.

However, though provisions mentioned would seem difficult to carry out, the principal, and controlling, aspect of the litigation is that, under the provisions of the statute, many

---

[2]Another conflict is found in Ark. Stat. Ann. § 3-101 (b) (Supp. 1973) which states:

> " 'Primary election' shall mean any election held by a political party in the manner provided by law for the purpose *of selecting nominees of said political party for certification as candidates for election at any general or special election in this State*." [Our emphasis].

[3]*Moncus v. Raines*, 210 Ark. 30, 194 S.W. 2d 1.

qualified voters would be disenfranchised; this, for the reason that hundreds and hundreds of voters consider themselves independents and do not participate in party primaries; not only that, but others, who might belong to a third political party, which held no primary election, would also be disenfranchised. In other words, thousands of citizens who are qualified to vote under the provisions of Amendment 51 (Voter Registration Act) to the Constitution of Arkansas could be deprived, under the provisions of Act 168, of the privilege of casting their ballots. We need say no more to establish that the act is invalid.

Affirmed.