The Honorable Joe E. Yates State Senator 1812 Clark Bentonville, Arkansas 72712
Dear Senator Yates:
This is in response to your request for an opinion regarding the call for a special election in Benton County. Your questions have been restated as follows:
 1) Can the Quorum Court call for a separate special election on the 911 emergency question on the same day as the March 8, 1988 primary if they furnish a separate ballot at the polling place?
 2) Can they use the same election judges and clerks for the election?
It may be concluded that the answer to your first question is, generally, yes. Section 5 of Act 683 of 1985, which is codified as Arkansas Code of 1987 Annotated 12-10-318, addresses the Quorum Court's authority to call a special election for the purpose of levying an emergency telephone service charge. 12-10-318 does not specify the time for holding the election, nor does there appear to be any separate authority to this effect. The Quorum Court's authority in this instance reasonably extends to setting the time for the election.
There are, however, several potential problems which must be considered in this regard. The Arkansas Supreme Court's decision in Mears v. City of Little Rock, 256 Ark. 359, 508 S.W.2d 750
(1974) offers some guidance in resolving questions relating to special elections held in connection with party primaries. The issue in that case involved Act 168 of 1973 which provides for the final election of City Directors (in cities with a manager form of government) in the primary elections. The Court noted that while the statute, now codified as A.C.A. 14-47-109, provides for the election of Directors by a nonpartisan vote, the election itself would be held at the Democratic and Republican primaries. 256 Ark. at 351. The Court noted further that "[b]oth the Democratic and Republican primaries would have to be utilized [and] it would appear that the total number of votes would be ascertained by adding the total vote received by persons in the Democratic primary to the total vote received by persons in the Republican primary." Id.
The Court invalidated the Act following its discussion of the Act's consequences, stating:
 . . . the principal, and controlling, aspect of the litigation is that, under the provisions of the statute, many qualified voters would be disenfranchised; this, for the reason that hundreds and hundreds of voters consider themselves independents and do not participate in party primaries; not only that, but others, who might belong to a third political party, which held no primary election, would also be disenfranchised. In other words, thousands of citizens who are qualified to vote under the provisions of Amendment 51 (Voter Registration Act) to the Constitution of Arkansas could be deprived, under the provisions of Act 168, of the privilege of casting their ballots.
256 Ark. 361-362.
It cannot be conclusively stated how far the Mears decision extends in determining whether a primary has been improperly "utilized." The case indicates, at a minimum, that provision must be made for independents and third party members to cast their ballots. The Mears v. Little Rock decision may also be controlling if electors must identify the party primary in which they intend to vote in order to cast their ballots. It may be successfully contended in that instance that, while a separate ballot is offered, the election is in effect held at the primary, contrary to the ruling in Mears.
It should be noted, finally, that all election laws generally applicable to this type of election will be controlling. This includes, inter alia, laws pertaining to election precincts, polling places, and election officers. See, e.g., A.C.A. 7-4-107
and 7-5-101.
It must be initially recognized in response to your second question that the election officers in party primaries are selected by the county committee of each political party. See A.C.A. 7-7-302. Furthermore, while the expenses of a primary election may be paid by a county, A.C.A. 7-3-101 states that the parties bear these expenses. It is therefore reasonable to conclude that the political parties cannot be compelled to offer the services of their judges, clerks and other officials of the primary election for purposes of a special election held on the same day.
A review of the election laws does offer some indication that the County Board of Election Commissioners would not, as a general matter, be precluded from appointing the election judges and clerks who serve in the primary. A.C.A. 7-4-107 appears to place no limitation in this regard on the Board's selection of election officers. This if course assumes that the officers satisfy all applicable qualifications, see A.C.A. 7-4-109; and that they subscribe to the appropriate oath. See A.C.A. 7-4-110. However, it must be recognized that the election precinct boundaries, the location of voting places, and the number of election officials may vary from those established for purposes of the primary since these elements are governed by distinct provisions. See A.C.A.7-5-101, 7-4-107, 7-7-302 , 7-7-303. Practical considerations may therefore preclude use of the same election judges and clerks.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.