The Honorable Jim Argue State Representative 5905 Forest Place, Suite 210 Little Rock, Arkansas 72207-5245
Dear Representative Argue:
This is in response to your request for an opinion on a follow-up question arising from Op. Att'y Gen. 96-007, issued to you on February 22, 1996. In that opinion, I opined that the General Assembly may not constitutionally enact legislation to provide for the calling of a constitutional convention and the election of nonpartisan delegates to serve at the convention, if these matters, under the legislation, are to be voted on at the preferential primary election. I stated that the placement of these nonpartisan issues on the primary ballot would violate Arkansas law (A.C.A. § 7-7-306) and would have the effect of unconstitutionally disenfranchising voters under the Arkansas Supreme Court's decision in Mears v. City of Little Rock, 256 Ark. 359,508 S.W.2d 750 (1974). You have now asked whether proposed legislation on this topic would pass constitutional muster if the General Assembly provided that the election of nonpartisan delegates to a constitutional convention occur at a special election held at the same time and at the same polling places as preferential primary elections but utilizing separate ballots.
It is my opinion that the answer to this question is not as clear-cut as the answer provided in Op. Att'y Gen. 96-007 with regard to these nonpartisan issues being placed directly on the primary ballot. The use of separate ballots at a "special election" held on the same day and at the same locations as the preferential primary elections to decide these nonpartisan issues might pass constitutional muster, but there are at least two arguments which should be noted as potential challenges to such action. First, it has been stated previously in a similar context that:
 It cannot be conclusively stated how far the Mears decision extends in determining whether a primary has been improperly `utilized.' The case indicates, at a minimum, that provision must be made for independents and third party members to cast their ballots. The Mears v. Little Rock decision may also be controlling if electors must identify the party primary in which they intend to vote in order to cast their ballots. It may be successfully contended in that instance that, while a separate ballot is offered, the election is in effect held at the primary, contrary to the ruling in Mears.
Op. Att'y Gen. 87-427(copy enclosed) at p. 2 (noting problems with a quorum court calling for a separate special election to authorize a 911 emergency system on the same day as the primary even though separate ballots are provided, but concluding that the quorum court likely had such authority).
It might be argued, as a potential challenge to the action you suggest, that the holding of a separate special election on nonpartisan issues at the same time and same place as the primary elections, even though separate ballots are provided, would still have the effect of disenfranchising some voters who simply do not participate in party primaries, as noted in Mears.
This argument would appear to have lost some validity in light of the fact that some of the practical problems of holding a special election for nonpartisan issues on the same day as the primary election (as noted in Opinion 87-427) have been eliminated by recent amendments to Arkansas law. First and foremost, such primaries are no longer conducted by political parties. They are conducted by the county boards of election commissioners under the direction of the State Board of Election Commissioners. A.C.A. § 7-7-201(b)(1) (Supp. 1995). Additionally, Op. Att'y Gen. 87-427 noted a potential problem with partisan primary judges and clerks conducting a nonpartisan special election. Act 901 of 1995, however, changed the way judges and clerks of the primary elections are selected. They are no longer selected by the county party committee at an open public meeting, but are selected in the same manner as the judges and clerks of general elections. See A.C.A. § 7-7-302 (Supp. 1995). In addition, Op. Att'y Gen. 87-427 noted a problem in conducting an election on nonpartisan issues on the same day as the primary election, because the political parties were responsible for paying the expenses of the primaries (although the counties could pay them if they chose to). It was concluded in Op. 87-427, therefore, that the political parties could not be compelled to offer the services of their election judges and clerks for purposes of conducting a special election held on the same day. Of course, under current law, as recently enacted, the expense of conducting party primaries is borne by the State of Arkansas, and thus there is no longer any problem of this nature. See A.C.A. § 7-7-201(a) (Supp. 1995). Finally, the most important question raised by the holding of a nonpartisan election on the same day and at the same place as the primary elections (involving the disenfranchisement of independent or third-party voters) would appear to be lessened if these voters do not have to select a party primary in which to vote in order to cast their ballots on the nonpartisan issues. Presumably, with the election being conducted by the county board of election commissioners, with judges and clerks selected in the same manner as in general elections, and with the expenses of the election paid by the state, such independent and third-party voters would not have to identify a particular party primary in which to vote in order to cast their separate ballot on the nonpartisan issues. It would appear therefore, under all of these new legislative amendments, that independent and third-party voters wishing to vote only on the nonpartisan issues (regarding a constitutional convention) could do so on a separate ballot, without having to identifying the party primary in which they intend to vote, and the disenfranchisement of such voters would thus not be as apparent as the facts of Mears.
It is unclear, however, how a court presented with the question today, under the new legislation passed in 1995, would decide the issue. If, as stated above, provision could be made for third party and independent voters to cast their ballots on these nonpartisan issues independently and to vote without the necessity of declaring the party primary in which they intend to vote, a court might uphold a separate special election using separate ballots. The potential for disenfranchisement of voters in such a case would appear to be lessened somewhat by the 1995 legislation, and might only occur with regard to those voters who, as stated in Mears, consider themselves independents and do not participate [at all] in party primaries. . . ." 256 Ark. at 362. Presumably, however, those voters, if properly informed of the special election held on the same day as the party primaries, would not be disenfranchised.
Thus, although the Mears decision might still be cited to challenge even the use of nonpartisan separate ballots at a primary election, the applicability and prohibition of the Mears decision to the use of such separate ballots, especially in light of the new 1995 legislation, is not apparent. The Mears case may thus stand as no prohibition to the action you suggest. One other potential challenge to such action should be mentioned, however. In Op. Att'y Gen. 95-022, issued to you on February 13, 1995, this office opined, although the issue is not entirely clear, that the use of a special election rather than a general election to present the question of calling a constitutional convention and electing delegates thereto was "questionable." This conclusion had nothing to do with holding such an election at the preferential primary or the use of separate ballots or in fact any issues related to the procedure for conducting the election. That conclusion, rather, was based upon the special nature of the constitutional convention, and the General Assembly's possibly limited role in taking action related thereto. Although a court would in all likelihood have to decide the issue, there may be a question as to whether the calling of a constitutional convention, and the election of delegates to such convention, could be held at a special election at all, much less at a special election held on the same day as a primary election. This point was not addressed in the issuance of Opinion 96-007, because the law as to the inclusion of such nonpartisan issues on an actual primary ballot (the question posed in Opinion 96-007) was so clear. See Mears, supra. The discussion of this point in Opinion 96-007 was therefore unnecessary. Because, however, the use of separate ballots (as you now posit) and the new 1995 legislation blur the applicability and clarity of that law to the question now posed, I feel it necessary to point out a potential challenge based upon the use of any special election to decide these constitutional convention issues. See again, Op. Att'y Gen. 95-022.
In conclusion, the answer to your question is not clear under Arkansas law. If a court were to hold that the use of a special election is permissible at all for deciding the question of calling a constitutional convention and electing delegates thereto, it is possible, in my opinion, that the special election could be held on the same day as the preferential primary election, assuming separate ballots are used.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh